# WHEELING.

## PETERSON v ANKROM.

### Submitted Sept. 10, 1884.—Decided Nov. 15, 1884.

1. In 1802, the county court of Ohio county made this order: "Deed from James Caldwell to John Young was proven in court to be the act and deed of said James Caldwell, who hath acknowledged the same in the presence of Samuel Wharton and William Adcock, justices of the court of common pleas, and ordered to be recorded *in perpetuam rei memoriam.*" The said deed was thereupon recorded in said county by the clerk who omitted to record said order, but added to said record the following certificate: "A copy from the original which was proven in court at January term, 1802, by a certificate from under the hand and seal of office of Mathew Clarkson, mayor of the city of Philadelphia,

and ordered to be recorded " He also recorded with the deed a certificate of said Wharton and Adcock, that the deed had been acknowledged before them in Philadelphia, but no certificate of Clarkson, mayor, &c. Held:

The said deed was a recorded instrument and a copy therefrom admissable in evidence in this State. (p. 59.)

2. An affidavit, made in the city of Philadelphia in 1834 to the effect that affiant was well acquainted with a deceased person and his family, was offered in evidence in an action in this State in 1882, to prove that such deceased person died intestate and left but one child. In the absence of any proof showing that the person who made said affidavit was dead, and that there were no persons living whose testimony could be obtained to prove the facts stated in the affidavit, the court did not err in refusing to admit the affidavit as evidence. (p. 61.)

The opinion of the Court contains a statement of the case.

*Ewing, Melvin & Riley,* for plaintiff in error.

*W. I. Boreman,* for defendant in error.

Snyder, Judge:

Writ of error to a judgment of the circuit court of Tyler county, rendered in an action of ejectment brought in July, 1868, by Sarah G. Peterson against Arthur Ankrom and others to recover the possession of a tract of 1,000 acres of land lying on the waters of Point Pleasant creek, in said county. A trial was had before a jury in August, 1882, and a verdict found and judgment given for the defendant. Upon the trial the plaintiff, after having read in evidence a copy of the grant for said land from the Commonwealth of Virginia to James Caldwell, dated October 25, 1774, offered in evidence to the jury a certified copy from the records of deeds of Ohio county, of what purports to be a deed, dated January 12, 1785, for same land from said Caldwell to John Young, with the following certificates thereon:

" The 15th day of January, 1785, before us, the subscribers, two of the justices of the court of common pleas of and for the city and county of Philadelphia, came the above named James Caldwell, in due form of law, acknowledged the above written indenture to be his act and deed, and desired the same may be recorded as such according to the laws of Virginia.

" Witness our hands and seals the day and year aforesaid.

" Samuel Warton.   [Seal.]

" Will Adcock.   [Seal.]

" Pennsylvania, ss. :

" The Supreme Executive Council of the Commonwealth of Pennsylvania :

" *To all to whom these presents shall come, greeting :*

" Knew ye, that William Adcock and Samuel Warton, Esquires, whose names are subscribed to the instrument of writing hereto annexed, were at the time of subscribing the same, justices of the court of common pleas, in the county of Philadelphia, in the said Commonwealth, duly appointed and commissioned, and full faith and credit is and ought to be given to them as such.

" Given in council under the hand of His Excellency, Benjamin Franklin, Esquire, president, and the seal of the State at Philadelphia, this twenty-seventh day of January in the year of our Lord, one thousand seven hundred and eighty-six.

"Attest:      B. Franklin, *President.*

" James Trumble,

" *For John Armstrong, Jr., Secretary.*"

" Recorded in the office for recording of deeds for the city and county, &c., of Philadelphia, in deed book No. 43, p. 310.

" Witness my hand and seal of office the 10th day of March, 1795.

" Mathew Irwin, *Recorder.*   [Seal.]

" A copy from the original which was proven in court at the January term, 1802, by a certificate from under the hand and seal of office of Mathew Clarkson, mayor of the city of Philadelphia, and ordered to be recorded.

Teste:      Moses Chapline, C. O. C."

The plaintiff also offered in evidence with said copy and certificates a certified copy of the following order from the records of the county court of Ohio county :

" At a conrt held for Ohio county, on Mondy, the 4th day of January, 1802, present, Archibald Woods, John McColloch, George Knox and John Bukey, gentlemen :

" On page 82 of order book No. 8 of said court, appears this record : Deed from James Caldwell to John Young was

proven in court to be the act and deed of said James, who hath acknowledged the same in the presence of Samuel Warton and William Adcock, justices of the court of common pleas, and ordered to be recorded *in perpetuam rei memoriam.*"

The copy of said deed, on objection by the defendants, was excluded by the court from the jury; and this action of the court presents the first question raised in this Court by the plaintiff in error.

There is no question that the land conveyed by said deed was at the date of the deed in Ohio county, but by the subsequent formation of new counties it was cut off and now lies in Tyler county; consequently, Ohio was the proper county for its recordation. The only question then to be determined is, was the deed so recorded in that county as to make a copy therefrom evidence in this action?

· A deed admitted to record by the county court of Harrison, in 1804, on the certificate of two justices "in and for the city and county of Philadelphia," certified by a prothonotory of the court of common pleas of said county, was held by the court to be properly recorded in Harrison county and a copy therefrom admitted in evidence in the case of *Campbell* v. *Hughes*, 12 W. Va, 183, 194. The Court in that case held that, under the provisions of chapter 16 of the Acts of 1776, a deed acknowledged in Philadelphia before two justices and properly certified, might be legally recorded in this State on such acknowledgement and certificates. I think this was a mistaken view of the statute. In the first place, it provides that, deeds made by persons residing outside of this State, for the conveyance of lands in this State shall be acknowledged or proven "before the mayor or other chief magistrates of the city, town or corporation, wherein or near to which" they shall reside; and then it further provides that, "where the parties making such deeds shall reside in any of the States of America, and there shall happen to be no city, town or corporation, within the county wherein they shall dwell," the deed may be acknowledged or proven before two justices of the county, &c. 9 Hen. Stat. 207.

This language, it seems to me, does not authorize the acknowledgment of a deed before two justices, unless and except in counties in which there is no city, town or corpora-

tion; and as it appeared on the face of the certificates, and was judicially known to the court, that there was such city in the county of Philadelphia, the acknowledgment before justices in that case was not sufficient to authorized the deed to be admitted to record in this State so that a copy therefrom could be received in evidence.

But in my view of the case at bar, it is not necessary to approve or disapprove the ruling in that case, nor is it necessary to consider any of the certificates endorsed on the deed now in question except that signed by Moses Chapline and the order of the county court of Ohio county made January 4, 1802.

The certificate of said Chapline entered on the deed book under said deed, if it answered no other purpose, was sufficient to direct attention to the records of the county court of Ohio county at the January term of 1802; for it expressly states the deed "was proven in court" at that term. This entry on the deed book, being thus sufficient to direct any one examining the deed as recorded to the records of the county court, would give the said order the same effect as if it had also been recorded with the deed; because the record is notice not only of every fact there disclosed, but of every fact of which it gives sufficient notice to put the person examining it on the enquiry of and which if diligently pursued will give the notice.

Treating said order as a part of the record and as the evidence on which the clerk admitted the deed to record, does it show that the deed was a recordable instrument? For, if it was, then, as we have seen, it was properly recorded and the copy offered in evidence should have been admitted.

The order says: "Deed from James Caldwell to John Young was proven in court to be the act and deed of said James." The reference here is necessarily to the *original* and not a copy of the deed, and if the order had ended here there could be no doubt or question that the original deed had been proved in the county court of Ohio county to be the act and deed of the said James Caldwell. The words which follow do not, in my judgment, qualify or restrict the former part of the order. It is certain that they do not necessarily do so. They may have been added simply to identify the deed as

the one proven; that is, to show that the deed proven was the same that had been acknowledged by the said James "in the presence of Samuel Wharton," &c.

Even admitting that the order is capable of the two interpretations—the one that the words following " James," were intended to show how and in what manner the deed was proven, and the other that said words were added simply to identify and describe the deed which had been proven—the court would in such case, either interpretation being equally admissable, resolve in favor of that which would give validity to the order. It is not to be presumed that a court would do either a vain or an unauthorized thing. The presumption is exactly the reverse; and consequently, when an act of a court is equally susceptible of two constructions, one of which renders it nugatory and the other gives it validity and effect, the latter will always be regarded as the true construction. For these reasons I think the trial-court erred in excluding the copy of said deed from the jury.

The next error assigned is, that the court refused to admit in evidence the affidavits of David Lewis and John Miller, made and sworn to in Philadelphia, June 23, 1834. Before offering the affidavits the plaintiff read to the jury a deed, dated August 7, 1794, from John Young to John Phillips for the land described in the declaration, and proved by W. F. Peterson, a son of plaintiff's devisor, that said affidavits were found among his father's papers at his death, and that he had known them to be in his father's possession more than thirty yerrs. The affidavits state and affiants depose " that they were intimately acquainted with John Phillips, late of said city, (Philadelphia,) and his family, and that he departed this life intestate, leaving a widow since deceased, and issue only one child, namely William Phillips, now of said city, his sole heir-at-law."

Pedigree, of necessity and from the nature of things, is open to proof by heresay, in respect to all family incidents as to which no living witness can be found. If what has been handed down in families cannot be in this way proved, pedigree could not in most cases be proved at all. 1 Whart. Ev. § 201. Pedigree, in the sense used with respect to this kind of evidence, includes not merely the relationship of a

family, but the dates of births, deaths and marriages of its members, where the object of such evidence is to trace relationship. *Id.* § 208. Facts of this character may be proved by general reputation in the family by the testimony of witnesses whose knowledge of that repute and of the conduct of members toward each other, is that which usually exists among intimate acquaintances. *Eaton* v. *Tallmadge,* 24 Wis. 222. "Oral declarations are equally primary as family records or other documents of the nature of hearsay, but the competency of each depends not, indeed, on entire absence of more satisfactory evidence, but on the death of the declarant; and if he is alive and present or within reach of process, the declaration, whether oral or written, is incompetent. Abb. Tv. Ev. ch. 5, § 42, p. 96; *Liggett* v. *Boyd,* 3 Wend. 376.

The relaxation of the general rules of evidence in cases of pedigree refers to the nature of the evidence. Reputation, hearsay and family records are admissable from necessity; but the proof of these by other than legal evidence is not required by necessity. They must be proved, as all other facts are proved. It is stated in *Keller* v. *Nutz,* 5 Serg. & R. 251, that, " *ex parte* affidavits proved to have been made are stronger evidence than what one man heard from another; but where the witness is living, and within the process of the court, the matter to be proved by him must be proved as all other facts are." In that case the court waived the decision of the question whether *ex parte* affidavits taken beyond the sea, or in any of the United States, could be received as evidence of pedigree, the witnesses being alive. *Winder* v. *Little,* 1. Yeates 152.

In the case before us it is not shown that the persons who made the affidavits offered in evidence are dead, or that they were, at the time of the trial, beyond the process of the court. It is true the affidavits were made in Philadelphia in 1834, and that the affiants then resided there, and it is insisted these facts make the affidavits evidence, because from the great lapse of time the court should presume the death of the affiants. *Colvert* v. *Milstead,* 5 Leigh, 88, 96.

It must be remembered that the admission of irregular or hearsay evidence in cases of this kind is founded on necessity, and in order to make it admissable, the necessity should be

shown.  Even if the persons who made these affidavits are presumed to be now dead, the presumption could not be extended to all persons having knowledge of the same facts.  It is almost certain that many persons now living can be found who are fully cognizant of the facts set forth in these affidavits.  The depositions of such persons can be taken and that would be better evidence than these affidavits.  I do not, therefore, feel called upon to decide whether or not these affidavits could be admitted if it had been shown that there were no persons now living whose evidence could be obtained to prove the facts stated in these affidavits.  In the absence of any proof on the subject, I think, the presumption is that such persons are living and their evidence obtainable; and, consequently, the said affidavits are not such evidence as the law requires, under the particular facts, even in cases of this kind, and that the court did not err in rejecting them.

After the plaintiff had read to the jury the will of William Phillips, probated in 1845, in which the testator authorized his executors to sell and convey his lands including his title to the land in controversy and a deed from said executors to W. F. Peterson for said land, dated October 14, 1863, and also the will of said Peterson, probated in 1866, devising all his real estate to the plaintiff, she, as the bill of exceptions states, "offered to prove occupancy for more than ten years before the bringing of this suit of a part of the 1,000 acres claimed by the plaintiff, but not of any part of the 1,000 acres involved in this issue of the present suit; on objection by defendants this offer was rejected and the plaintiff excepted."

It is very probable this ruling of the court was erroneous, but the exception is so indefinite and apparently contradictory that it is impossible to determine its true character and effect.  It is certain that, if the plaintiff had been in the actual posession of any part of the land described in her declaration for more than ten years under a color or claim of title adverse to that of the defendants, she was entitled to prove the fact, although the defendants may have disclaimed title to such part and set up no claim to it, unless the defendants had the better title and were also in the actual possession of some part of their tract which covered the land in controversy.  *Core* v. *Faupel,* 24 W. Va; 238 *Taylor* v. *Burnsides,* 1

Grat. 165.   As the case must be remanded to the circuit court for a new trial, I consider it unnecessary to say more on this point, or on the propriety of the action of the court in excluding from the jury, on the motion of the defendants, all the evidence adduced by the plaintiff in support of her claim to the land in controversy.

For the error hereinbefore pointed out I am of opinion that the judgment of the circuit court should be reversed, the verdict of the jury set aside and a new trial awarded.

REVERSED.   REMANDED.