# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## B. W. RAWLES, ET ALS., V. MARY E. BAZEL, ET ALS.

February 26, 1925.

1. DESCENT AND DISTRIBUTION—*Evidence to Establish Relationship—Negative Evidence.*—Where the chief issue involved in a suit was whether complainants' father was a half brother of intestate, the testimony of witnesses acquainted with the intestate and her sister who testified that they had never heard them say anything about a brother or any relatives in Ohio was largely negative testimony and weighs but little against the positive testimony of unimpeached witnesses that intestate had such a brother and relatives.

2. DESCENT AND DISTRIBUTION—*Evidence—Administration and Settlement.*—In a suit where the chief question at issue was whether complainants' father was a half brother of intestate, evidence was introduced to the effect that when a brother of intestate was killed in the Civil War and intestate's father died during the Civil War, the administrator of both estates in settling his accounts divided the net proceeds between intestate and her sister, leaving complainants' father entirely out of consideration. While under ordinary circumstances clearly a great deal of weight should be attached to these settlements, yet in view of the unsettled and stormy condition of the affairs of that period, this evidence is not controlling, in view of other documentary evidence and the overwhelming testimony produced by complainants to the effect that their father was a half brother of intestate.

3. PEDIGREE—*General Rule—Members of Families.*—Testimony concerning pedigree is well recognized as an exception to the hearsay rule, provided that no other better evidence can be obtained, and that the declarant or source of the witness' information was a member of the family or related to the family, whose history the fact concerns, and was deceased or out of the State.

4  DESCENT AND DISTRIBUTION—*Intestacy—Evidence to Show that Complainants were Descended from a Half Brother of the Intestate.*—The sole issue in the instant case was whether Frank, the father of complainants, was a half brother of the intestate. Witnesses who had known intestate and her sister for many years had heard them speak of their brother Frank living in Ohio and of their nieces, his daughters. These witnesses and witnesses who had known the family for many years, and witnesses in Ohio who had known this brother Frank and his

family, notwithstanding some discrepancies in their evidence, practically established beyond doubt that Frank, the father of complainants, was the half brother of the intestate. In addition the Ohio families had in their possession photographs which the evidence shows were likenesses of the Virginia relatives and the Virginia family had photographs which were shown by the evidence to be of the Ohio relatives.

*Held:* That there was sufficient, competent and legal evidence to support the contention of the complainants that their father, Frank, was a half brother o the intestate.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for complainants. Respondents appeal.

*Affirmed.*

The opinion states the case.

*Hunsdon Cary*, for appellants.

*Byrd & Gwathmey* and *F. S. Crosby*, for the appellees.

CHICHESTER, J., delivered the opinion of the court.

This litigation was initiated by a bill filed by Mary E. Bazel and others, against B. W. Rawles as administrator of Ellen C. Rawles, and in his own right, and others, to surcharge and falsify the accounts of B. W. Rawles as administrator aforesaid, and to establish an interest in the estate of Ellen C. Rawles in complainants.

Outside of one or two instances in reference to the admissibility of evidence, the questions involved in this suit are entirely of fact.

The facts of the case, established by documentary evidence, the testimony of witnesses and fair inferences to be drawn from all the evidence, lead to the inevitable conclusion that the trial court was plainly right. They are as follows:

Mrs. Ellen C. Rawles, who was, before her marriage, Ellen C. Bazel, and her sister, Elizabeth Ann Bazel, were born near Fishersville, Augusta county, Virginia. They were the daughters of John Bazel and Hannah Paul Bazel of said county. They had one full brother, James Bazel, who was killed during the Civil War. He was unmarried and died intestate. Their parents both died dur ng the Civil War. Ellen C. Bazel married one James Rawles, an engineer in the employ of the Chesapeake and Ohio Railway Company, who predeceased her without issue and left her quite a considerable estate. Prior to his death, however, and for many years James Rawles, his wife, Ellen B. Rawles, and her sister, Elizabeth Ann Bazel, lived together in the city of R chmond, Virginia, at 1804 east Main street.

On July 8, 1911, Mrs. Ellen C. Rawles, widow of James Rawles, who had been dead some years, died intestate in Richmond city, and Dr. B. W. Rawles, the appellant, hereafter referred to as the respondent, as he was in the trial court, who seemed to have been a friend of the family, but who was not a relative as his name would indicate, qualified as administrator.

In the settlement of the personal estate of his decedent, amounting to $3,851.25, defendant treated Elizabeth Ann Bazel as the sole distributee of said estate and paid the above amount to her accordingly. It is also in evidence that Elizabeth Ann Bazel collected the rents from the real estate No. 1804 east Broad street and No. 1910 Pleasant street, the value of which real property does not appear from the record, it not being involved in this suit.

Elizabeth Ann Bazel died, at an advanced age, in April, 1916, leaving a last will and testament by which she devised and bequeathed her entire estate to the respondent, to whose home she had moved some months

before, and with whom she lived, at the time of her death.

On the 16th day of February, 1917, Mary E. Bazel, Enos Franklin Bazel, Bessie Canter, Thomas F. Byrd, administrator of John Bazel, deceased, Anna B. Little and Mary Bazel Gillaugh, filed their bill in the Chancery Court of the city of Richmond, the essential allegations of which were:

"(1) James Rawles died in Richmond, Virginia, on November 20, 1908, without issue, leaving a will by which he devised all of his property, both real and personal, in fee simple to his wife, Ellen C. Rawles, who, before her marriage, was Ellen C. Bazel, said will being admitted to probate in this court and recorded in will book 10, page 441.

"(2) The said Ellen C. Rawles, *nee* Bazel, died intestate in the city of Richmond, July 8, 1911, and one Dr. B. W. Rawles of no kin or connection whatever to Ellen C. Rawles qualified on October 6, 1911, in this court as administrator of her estate.

"(3) The next of kin and the persons who, under the statute of descents and distribution of Virginia are entitled to the estate, personal and real, of the said intestate, Ellen C. Rawles, are as follows:

"1. A brother,_____Bazel, who died without issue and intestate during the Civil War.

"2. Elizabeth Ann Bazel, who died without issue and unmarried in Richmond on the _____day of _____, 1916.

"3. Frank Bazel, who died intestate in the State of Ohio on January 22, 1899, leaving four children as follows, your complainants:

"(a) Mary Bazel Gillaugh,

"(b) Anna B. Little,

"(c) John Bazel, and

"(d) Mrs. Lillie B. Dundon.

"John Bazel died in Ohio, in 1912, leaving surviving him his widow, (a) Rosa Z. Bazel, and three children, namely, your complainants:

"(a) Mary E. Bazel,

"(b) Enos Franklin Bazel, and

"(c) Mrs. Bessie Canter.

"Your complainant, Thomas B. Byrd, duly qualified as administrator of the estate of said John Bazel in this court on the 26th day of February, 1917, as will appear from a certificate filed herewith, marked complainants' exhibit A, and asked to be read as a part of this bill.

"Mrs. Lillie B. Dundon died leaving surviving her her husband, (a) Ulysis G. Dundon, and two children,

"(a) Ulysis P. Dundon, and

"(b) Grace Dundon,

whose present whereabouts are to your complainants unknown.

"(4) The said Dr. B. W. Rawles, as set forth in section 2 of this bill, qualified as administrator of the estate of Ellen C. Rawles and gave bond in the penalty of thirty-five hundred dollars ($3,500.00) for the faithful performance of his duties as such administrator, with the Empire State Surety Company as his surety.

"The inventory and appraisement of the estate of the said Ellen C. Rawles amounted to three thousand dollars ($3,000.00).

"In addition to the said personal property, said Ellen C. Rawles died seized and possessed of the following real estate:

"Two lots and the buildings thereon known as No. 1804 east Broad street and No. 1910 Pleasant street in the city of Richmond, Virginia.

"(5) It was the duty of the said Dr. B. W. Rawles, as such administrator, to distribute the estate of his de-

cedent, Ellen C. Rawles, in accordance with the statute of descent and distribution of Virginia, but instead of doing so he, after paying the expenses of administration, paid over the whole of the residue to Elizabeth Ann Bazel, a sister of Ellen C. Rawles, the decedent, who was only entitled to half of the same, your petitioners and the other heirs and distributees of Frank Bazel, Ulysis G. Dundon, Ulysis P. Dundon and Grace Dundon being entitled to the other half. The settlement of the accounts of B. W. Rawles before the commissioner of accounts of your honor's court on September 11, 1915, and recorded in the clerk's office of your honor's court in accounts of fiduciaries, book 153, page 49, shows this fact. A copy of said account is herewith filed, marked complainant's exhibit B.

"(6) As administrator, the said Dr. B. W. Rawles had no authority or concern with the real estate of his decedent and yet from the date of the death of Ellen C. Rawles on October 6, 1911, he collected the rents and profits of the two pieces of real estate set forth in section 4 of this bill.

"(7) Miss Elizabeth Ann Bazel, to whom the said B. W. Rawles wrongfully delivered the whole of the estate of Ellen C. Rawles, his decedent, died in the city of Richmond in 1916 at the age of eighty-eight years, enfeebled in body and intellect. Dr. B. W. Rawles was her physician and by methods which will be the subject of an independent judicial investigation procured from her a will giving him all her property and making him her executor. The said alleged will was admitted to probate in your honor's court on April 29, 1916. The said B. W. Rawles qualified as executor and gave bond in the penalty of four thousand dollars ($4,000.00), with the Aetna Accident and Liability Company as his surety. Thus the said B. W. Rawles had unlawfully

gotten into his possession not only the property of Miss Elizabeth Ann Bazel, but the property of your complainants and the codistributees and heirs.

"Therefore, being remediless save in this equitable forum, complainants pray that Dr. B. W. Rawles in his own right, as administrator of Ellen C. Rawles, and as executor of Elizabeth Ann Bazel; the Aetna Accident and Liability Company; the Empire State Surety Company, Ulysis P. Dundon, Grace Dundon and Ulysis G. Dundon, husband of Lillie B. Dundon, deceased, be made parties to this suit and required to answer the same but not under oath, which is expressly waived; Ulysis P. Dundon, Grace Dundon and Ulysis G. Dundon being nonresidents of this State, then an order of publication issue against them; that the accounts of the said B. W. Rawles, both as administrator of Ellen C. Rawles and executor of Elizabeth Ann Bazel, be surcharged and falsified, and that he be required to resettle his accounts before a commissioner of your honor's court; that he be required to pay your complainants their interest in the personal estate of Ellen C. Rawles and to account to them for the rents and profits of the real estate of which Ellen C. Rawles died seized and possessed; that a receiver be appointed to hold and collect the rents and profits from the real estate said Ellen C. Rawles died seized and possessed, namely: No. 1804 east Broad street and 1910 Pleasant street in the city of Richmond; that said B. W. Rawles be enjoined and restrained from disposing of the property, real or personal, which came to him by virtue of the alleged will of Elizabeth Ann Bazel, and for general relief."

Respondent demurred to the bill and filed his answer in which he denied that Ellen C. Rawles and Elizabeth Ann Bazel ever had a brother, Frank Bazel, and charging, in effect, that complainants were adventurers, un-

dertaking to acquire an interest in property in which they, in fact, had none.

In disposing of the controversy the trial court entered the following decree:

"This cause, which has been duly matured at rules, docketed and set for hearing, came on this day to be heard, on the bill of complaint and the exhibits therewith, taken for confessed as to Aetna Accident and Liability Company and Empire State Surety Company, they having been served with process and failed to appear, plead, answer or demur, on the demurrer of B. W. Rawles to the bill of complaint; on the joint and several answer of B. W. Rawles in his own right, and as administrator of the estate of Ellen C. Rawles, deceased, also as executor under the last will and testament of Elizabeth Ann Bazel, deceased; on the order of publication against the nonresident defendants and the proof of the posting and publishing the same; on the depositions of witnesses and exhibits therewith, duly taken and filed on behalf of the complainants, and on the depositions of witnesses and exhibits therewith, duly taken and filed on behalf of the defendants, and was argued by counsel.

"On consideration whereof, the court, being of the opinion that the demurrer is not well taken, the same is overruled.

"And the court being of opinion, for reasons in writing and now ordered filed as part of the record, that Jacob Franklin Bazel, deceased, late of Clarke county, Ohio, was a half brother of Ellen C. Rawles, deceased, late of the city of Richmond, Virginia; that the said Jacob Franklin Bazel died on the 22nd day of January, 1899, surviving him four children, namely: John Bazel, Anna Little, Lillie Bazel Dundon and Mary B. Gillaugh; that the last named John Bazel is dead, surviving him his children, Enos Franklin Bazel, Bessie Florence Bazel

Canter and Mary Ethel Bazel; that Lillie Bazel Dundon is dead, surviving her, two children, Ulyssis Pearl Dundon and Grace Dundon; that the said children and grandchildren of Jacob Franklin Bazel, deceased, are entitled *per stirpes* after the payment of the debts, funeral expenses and costs of administration of the estate of Ellen C. Rawles, deceased, to the same interest in the real and personal estate of Ellen C. Rawles, deceased, that Jacob Franklin Bazel, deceased, if alive, would take; that the said interest is one-third part of said estate; it is so adjudged, ordered and decreed.

"And it appearing that B. W. Rawles, administrator of the estate of Ellen C. Rawles, deceased, paid over to Elizabeth Ann Bazel, sister and sole distributee, the entire personal estate of the said Ellen C. Rawles, deceased, and has so settled his account as administrator, the said account is surcharged and falsified in this respect, and it is so adjudged, ordered and decreed.

"And it is ordered that this cause be, and the same is, referred to one of the commissioners in chancery of this court, with instructions to restate the account of B. W. Rawles, as administrator of the estate of Ellen C. Rawles, deceased, and also take an account of the real estate of which Ellen C. Rawles died possessed, its location and description, the rents received therefrom and who received the same, what expenditures, in the way of insurance, repairs, upkeep and agent's commissions, were made and by whom, who has paid the taxes thereon and whether any taxes thereon remain unpaid."

From this decree an appeal was awarded by one of the judges of the Supreme Court of Appeals.

It is apparent that the sole issues before the trial court were, and now before this court are, did Ellen C. Rawles and Elizabeth Ann Bazel have a half brother,

Jacob Franklin (commonly called Frank) Bazel, and are complainants and the respondents, other than Dr. Rawles, his heirs at law and distributees?

The evidence submitted on behalf of the complainants establishes these two contentions practically beyond the peradventure of a doubt. It comes from three sources; witnesses living in the city of Richmond who had known Ellen C. Rawles and Elizabeth Ann Bazel for many years, who had heard them speak of their brother, Frank, as living in Ohio and of their nieces, his daughters; witnesses who lived in Augusta county and who knew the Bazel family in the early part of the 19th century and down to and during the Civil War; documentary evidence of record in the clerk's office of Augusta county; and the evidence of witnesses in Ohio. In addition the Ohio Bazels had in their possession photographs which the evidence shows were likenesses of the Virginia relatives and the Virginia Bazels had photographs which were shown by the evidence to be of the Ohio relatives. There are some discrepancies in the evidence in support of these claims, it is true, but no more than would be expected under the circumstances of a case of this kind.

From the whole mass of evidence submitted by the litigants in this cause we gather the following facts as clearly established:

John Bazel, of Fishersville, Augusta county, Virginia, was married twice.

His first wife was a Miss Frazier.

There was issue of this marriage, a son, called Frank.

That the mother died at the birth of this son in 1828.

That John Bazel married a second time, in May, 1829, a Miss Hannah Paul.

That there were three children, issue of the second marriage; James Bazel, who was killed in the Civil

War Ellen C. Bazel (who married James Rawles), and Elizabeth Ann Bazel.

That Jacob Franklin Bazel, usually called Frank, migrated to Ohio early in life, married there and had the following children: John Bazel, Anna Little, Lillie Bazel Dundon and Mary B. Gillaugh.

That he died there in 1889.

The evidence which establishes these facts coming from the sources above indicated overlaps in such a way as to leave no doubt as to the identity of the claimants and as to the righteousness of their claim.

As illustrative of this let us take the following essential points and indicate by what evidence they are established.

1. John Bazel, of Fishersville, Augusta county, Virginia, father of Ellen C. Rawles, was twice married. The first wife being a Miss Frazier.

2. There was issue of this marriage, a boy, named Frank. This son Frank migrated to Ohio early in life.

3. Ellen C. Rawles had two nieces, Mrs. Little and Mrs. Gillaugh, daughters of her brother Frank, who lived in Ohio.

1. Evidence establishing this from Virginia consists of documentary evidence and evidence from the mouths of witnesses. A marriage bond dated May 4, 1829, is of record in the clerk's office of Augusta county, Virginia, wherein John Bazel is described as a widower, as follows:

"The condition of the above obligation is such that whereas a marriage is shortly intended to be solemnized between the above bound John Bazel, widower, and Hannah Paul, spinster, of Augusta county; if therefore, there shall be no lawful cause to obstruct the said marriage, then the obligation to be void, otherwise to remain in full force and virtue."

The marriage of John Bazel and Hannah Paul took place the following day on May 5, 1829.

Mrs. J. B. O'Connell, sixty-five years of age, a near relative of Ellen C. Rawles and very intimate for many years with her and her sister, having known them in her youth, states that she had heard these two ladies on many occasions say their father was married twice and that his first wife was a Miss Frazier.

Mrs. Lula Stirling, age seventy, who had known Mrs. Rawles intimately since 1880, testified that she had heard Mrs. Rawles state a number of times that her father had been married twice.

Mr. J. W. Guthrie, age sixty-six, whose family lived next door to John Bazel's family in Fishersville, testified that it was a matter of common knowledge in his family that John Bazel was married twice, and that his father had told him that John Bazel's first wife was a Miss Frazier.

A deed of record dated December 15, 1865, from Jacob F. Bazel and Mary E., his wife, of Clarke county, Ohio, to David Guthrie, of Augusta county, Virginia, conveying certain land in Augusta county, recites in part as follows concerning this land:

"Being known and designated as lot No. 5 in the allotment and division of the estate of John W. Frazier, deceased, which was allotted to John Bazzle, in right of his wife and which descended to said Jacob F. Bazzle as only child and heir·at law of the said wife of said John Bazzle, who was a daughter of the said John W. Frazier, deceased."

A copy of the "division of the estate of John W. Frazier, deceased," by which John Bazel was allotted this land is attached to the said deed, bearing date as of March 17, 1830.

These documents establish beyond the shadow of a

doubt that John Bazel, in 1830, received certain property in Augusta county, in right of his wife, a Miss Frazier, unquestionably his life estate of curtesy, which property on John Bazel's death and the expiration of his life estate, descended to their son, Jacob F. Bazel, as sole child and heir of the wife. In addition, this bears out the appellees' contention that there was issue of John Bazel's first marriage, a boy, and that the mother, the first wife, died shortly after its birth.

The complainants, Mrs. Little and Mrs. Gillaugh, Ohio witnesses, testify that their father's mother was a Frazier. That she died at the time of her father's birth and that he was born in Virginia in 1828.

2. Mrs. O'Connell testified that her cousin, Ellen C. Rawles, had frequently talked to her about her brother Frank, had said he was issue of her father's first marriage. Mrs. O'Connell had also heard her mother say that John Bazel had a son by his first marriage called Frank.

Mrs. Stirling, another witness who had known Mrs. Rawles for years, had heard her say her father had a son Frank, by his first wife.

The Ohio witnesses, complainants, testify that their father was the son and only child of John Bazel by his first marriage, that he was born in Virginia, June 28, 1828, and came to Ohio in his youth and had lived there up to the time of his death.

Mr. Guthrie, of Augusta county, testified that he knew the Bazel family when they lived at Fishersville, Augusta county; lived next door to them. Had seen Frank Bazel, who went to Ohio to live. He, Frank, and witness' father walked to the Ohio river together. His father returned but Frank remained in Ohio. Saw him on a visit to his home. Mrs. Rawles and Miss Bettie called him brother Frank.

Mr. C. J. Coiner, age seventy-five, who was raised on a farm near Fishersville and knew John Bazel well, being asked as to John Bazel's sons, said he had heard them (the Bazels) speak of Frank often.  He knew Jim Bazel.

3. Mrs. O'Connell testified:

"When I was in Richmond eight years ago last April, spent a month there, myself and husband, she (referring to Mrs. Rawles) then showed me a letter from her namesake, Frank's daughter that was called for her, and after she read the letter she wound her watch and put it in a case that her husband had given her for a bridal present and she remarked to me, you have a watch and I am going to give this to Frank's daughter who is named for me."

Mrs. O'Connell also testified as to seeing frequent letters which had passed between the Ohio people and Mrs. Rawles and also that she had seen pictures of the nieces in Mrs. Rawles possession—concerning which pictures more will be said later.

Miss Mary C. Jones, who knew Mrs. Rawles for at least fifteen or twenty years, testified that she had heard Mrs. Rawles speak of her two nieces, always referring to them as two girls.

Mrs. Gillaugh, one of the complainants (Ohio) testified that she had for years kept in touch with her aunts through frequent correspondence, although she had never seen either of them.  Correspondence had been broken off fourteen or fifteen years before her aunts' death but they had exchanged photographs.

Mrs. Little testified to the same effect.

Thus it will be seen that witnesses who were separated by great distance, without any opportunity to compare notes, testify to circumstances and events which leave little room for conjecture.

. . But this is not all. . The manner of the discovery of the descendants of .this half brother, Jacob Franklin Bazel, and the circumstances connected therewith, are of .themselves conclusive.

Mrs. O'Connell, the witness above referred to and a near relative of the Bazels, knew that there was or had been a brother Jacob Franklin Bazel or Frank Bazel as he was called. She knew he had two daughters, one of whom was named Ellen after her aunt Mary Ellen Rawles. She had often heard Mrs. Rawles speak of her brother Frank, and of her nieces. She had heard her mother tell about the Ohio relations. And so it was when the last surviving member of the Bazel family, Miss Bettie Bazel, died, and devised and bequeathed all the property she had inherited from her deceased sister, .Mrs. Mary Ellen Rawles, to Dr. B. W. Rawles, she realized that a gross injustice had been done the Ohio relatives. She knew these relatives lived in Ohio but.she had no idea in what part of Ohio they resided. She, however, found among the effects of her cousin, Miss .Bettie Bazel, a number of photographs, which were later filed as exhibits in the case, and which had been taken in Ohio, one in Springfield and the other at Xenia. On one was endorsed "Mr. and Mrs. J. W. Bazel to .Aunt Ellen Rawles." On the other "Mr. and Mrs. J. H. Gillaugh to Aunt Ellen Rawles."

To quote Mrs. O'Connell:

"In looking over these photographs among Richmond friends, there were some that had the Ohio photographer's name on them and I wrote to the postmaster in the city where the picture was taken and asked him if Frank Bazel's family lived in this place, and told him how I came to write it. I saw the name ,on a photograph; several of the photographs. He wrote me a letter saying the laws of Ohio forbid him to

attend to business of this kind as being postmaster, but he put my note to him in the paper of that city or town or whatever it was and he hoped I would find the children of Frank Bazel."

In response to this crude advertisement (a letter to a postmaster inquiring simply if Frank Bazel's family lived in Springfield, and explaining that the writer wrote to Springfield because she saw Springfield on a photograph), came letters from Mrs. Gillaugh and Mrs. Little, daughters of a Jacob Franklin Bazel of Salem, Ohio. The writers of these letters are uneducated; they had no information except that contained in the brief advertisement referred to, and yet they establish the truth of the contention of the complainants beyond a peradventure. They not only disclose that the writers are familiar with the Bazel relatives in Virginia, Mrs. Rawles, her husband, James Rawles, and Miss Bettie Bazel, but they knew their street number in Richmond, to which they had addressed correspondence in times past.

These letters are as follows:

"CEDARVILLE, OHIO, May the 30, 1916.
"Mrs. J. B. O'CONNELL,
"Dear Friend:

"As I saw the add in the paper that you was trying to locate Frank Bazel's family I will drop you a few lines as I am the youngest daughter of his. Papa died the 22nd of January, 1899, with Britis desease was sick off & on for 10 yr. that left Mama so she came & made her home with us for 5 years. She was taken with Parylesses & I took care of her till death Oct. 27th, 1905. Both are buried at Selma, Ohio, just six miles from where I live.

"There were four children of us. One boy and three Girls only two of us living Anna & Mary Ellen.

"John Bazel is the brother is dead leaves a wife & three children, at Selma, Ohio.

"Anna Little is old Girl living lives at Conellsville has husband & two children. Lillie Dendom is dead secod daughter leaves a husband and two children I can not tell where they are since death we have not head from them the youngest daughter that is myself Mary Ellan Gillaugh have a husband & three children live at Cedarville, Ohio, there is only two of the family of children livin Anna & I. I was named after papas sister. I have not heard from uncle or aunts for some time we lost the address have written to the post office but would not get any answer will close till I hear from you & if I can give you any further news about them I will do so I am a poor hand to write but mabe you can make out, I remain as ever

MRS. J. A. GILLAUGH,

"Cedarville, Ohio,

"Box 114,

"Cedarville, Ohio."

"Donnelsville, Ohio, May 28, 1916.

"MRS. J. B. O'CONNELL,

"Dear Madam:

"Having saw your add in the Springfield News for the children of Frank Bazel. I am his daughter and am very glad to know of some one who can tell me about my uncle and aunts it has been many years since we heard from them and we often wondered if they were still alive. I do hope you will write to me soon and tell us if they are still alive and if they are dead. When we wrote to them we always sent it to 1804 Broad St. Richmond, Va., but the last letters we wrote we never got any answer from them I will be so glad to know something of them there were 4 of us children I lost my brother and 1 sister now there are only 2 of us living

my sister and myself. My sister's address is Mrs.
J. A. Gillaugh, Cedarville, Ohio, I will anxiously await
an early reply from you.

> "Respective Yours,
> "MRS. ANNA B. LITTLE,
> "Donnellsville,
> "Clark Co., Ohio.

If anything further were needed it is furnished by the
photographs introduced in evidence, found in the re-
spective families of Ellen C. Rawles in Virginia and
Frank Bazel in Ohio.

The Ohio people have filed photographs purporting
to be pictures of the Virginia aunts, which were received
by them prior to the deaths of the aunts, and which have
been clearly identified by the Virginia witnesses who
knew the aunts, as being pictures of them; while, on the
other hand, photographs purporting to be the pictures
of the Ohio kin have been found among the effects of
Ellen C. Rawles, which have been clearly identified by
witnesses in Ohio as being photographs of the Ohio
claimants.

From the foregoing we feel justified in adopting the
summary of plaintiffs' evidence set out in the reply
brief of their counsel:

"There cannot be any doubt from the evidence in
this case that John Bazel had a son and Ellen C. Rawles
a half brother, named Frank Bazel, who migrated to
Ohio early in life. This much is conclusively estab-
lished by the Virginia evidence, exclusive of any testi-
mony whatsoever by the Ohio people. The sole ques-
tion remaining, therefore, is whether this Frank Bazel,
son of John Bazel, who migrated to Ohio early in life,
became and was the parent and ancestor of the claim-
ants in this case. Was their father, Frank Bazel, and
John Bazel's son, Frank Bazel, Ellen C. Rawles' brother,
one and the same?

"The evidence shows that Frank Bazel, claimants' father, was beyond the shadow of a doubt Ellen Rawles' brother.

"His name was Jacob Franklin Bazel, commonly called Frank, which is the exact name testified to by Mrs. O'Connell as being the name of Ellen Rawles' brother.

"He was born June 25, 1828, just about one year prior to the marriage of his father John Bazel and Hannah Paul, and was a few years older than Elizabeth Bazel, John Bazel's oldest daughter; and such is true of Ellen Rawles' brother.

"His mother was a Miss Frazier, who died shortly after his birth; and such is testified to concerning Ellen Rawles' brother.

"He came from Virginia to Ohio early in life and lived in Clarke county; and such is true of John Bazel's son, Ellen Rawles' brother.

"He had two sisters, Ellen C. Rawles and Elizabeth Bazel, who lived at 1804 Broad street, Richmond, Virginia, and a brother, James, who died during the Civil War, and these are the exact facts and names testified to by Virginia witnesses concerning John Bazel's family.

"One of his daughters was named Ellen after Ellen C. Rawles, and such is testified to by the Virginia witnesses concerning the family of Ellen Rawles' brother.

"His family had in their possession at the time of his death pictures of Ellen C. Rawles and Elizabeth Bazel; Ellen C. Rawles' family had in their possession pictures of Frank Bazel's daughters, identified as the present claimants.

"Finally, the deed of record from Jacob F. Bazel, of Clarke county, Ohio, to David Guthrie, of Augusta county, Virginia, conveying certain real estate situated in Augusta county belonging to Jacob F. Bazel out in

Ohio, conclusively links up the two men, Frank Bazel and John Bazel, as father and son.    This deed bears out the oral testimony of the witnesses in every respect.    It establishes the fact that John Bazel, of Augusta, the only John Bazel of that county known or heard of at that time, had had both a wife named Frazier and a son named Jacob F. Bazel.    It shows that certain real estate in Augusta county had been allotted to John Bazel 'in right of' this wife back in 1830, descended to Jacob F. Bazel, as sole heir and child of this wife of John Bazel, and was thereupon later, in 1865, after the death of John Bazel, conveyed by Jacob F. Bazel to David Guthrie.    The only estate known to the law at that time of which the writer of this brief has cognizance, which would be allotted to the husband 'in right of his wife,' was the common law life estate of curtesy defined in 1 Minor on Real Property, page 262, as follows:

" 'When a man takes a wife lawfully seized at any time during the coverture of an estate of inheritance, legal or equitable, such as that the issue of the marriage may by possibility inherit as heirs to the wife, has issue by her born alive during the coverture, and the wife dies, the husband surviving has an estate in her lands for his life, by way of prolongation annexed by law to the wife's estate, which is called an estate by the curtesy'."

There can be very little question that this was John Bazel's curtesy estate, and since the allotment of John Bazel was made during the year 1830, this bears out the other evidence in the case that his first wife, Miss Frazier, died shortly after the birth of Frank, born alive during coverture, in 1828.    It also bears out the evidence that Frank Bazel was born in Virginia and migrated to Ohio, as there would hardly have been a Frank Bazel, of Clarke county, owning real estate in Virginia inherited from his mother, unless he had originally come

from Virginia; nor would there have been any likelihood of John Bazel, of Augusta county, Virginia, having a son in Clarke county, Ohio, unless that son had gone from Virginia out to Ohio."

[1] As opposed to this respondent vouched several witnesses who were acquainted with the two old ladies in their latter days, who testified that they had never heard them say anything about a brother or relatives in Ohio. But this was largely negative testimony and weighs but little against the positive testimony of unimpeached witnesses.

Respondent further claims that the Ohio claimants first maintained that their father was a full brother of Mrs. Rawles. But the record discloses that they did not use the expression full brother in their bill or in evidence. They only claimed he was a brother and the first time their attention was called to the distinction they said he was a half brother, and they stated they did not know that made any difference in the amount he would receive as an heir and distributee of his deceased sister.

There are a number of minor discrepancies in the testimony of the Ohio claimants, especially as to surnames of Virginia ancestors and the place of their residence, and much effort has been made to array these into creating a formidable doubt as to the genuineness of the claim asserted, but these evidences of ignorance, for such they are, are only natural under all the circumstances of this case, and they have no tendency to weaken the strength of the claimants case.

[2] The only evidence in the case on behalf of respondent which has any appearance of strength is the fact that when James Bazel was killed during the early part of the Civil War, and when the father, John Bazel, died later during the war, John Hamilton, a prominent citi-

zen of Augusta county, qualified as administrator upon both estates and, in settling his accounts, divided the net proceeds between the two sisters and daughters Ellen C. Rawles and Bettie Bazel, leaving Frank Bazel entirely out of consideration.

Under ordinary circumstances clearly a great deal of weight should be attached to these settlements. However, in view of the overwhelming evidence produced by the appellees, and in view of the times, these settlements are not entitled to the weight they would otherwise receive. Not only does Mrs. O'Connell give Mrs. Rawles' explanation as to why Frank was left out in these settlements, but the unsettled and stormy condition of affairs of that period offer another explanation which is sufficient to account for the omission to include Frank Bazel in the settlement. The country was racked with war and there was little or no transportation, and at the time Frank was hundreds of miles away in Ohio, an alien State, was a nonresident of Virginia, and the entire proceedings an *ex parte* proceedings. This evidence is not controlling particularly as there has been adduced other documentary evidence, of equal value, which as strongly indicated the facts to be other than as thereby indicated.

Objection was made to the introduction of a great part of the evidence offered as violating the hearsay evidence rule.

[3] Testimony concerning pedigree is well recognized as an exception to the hearsay rule, provided that no other better evidence can be obtained, and that the declarant or source of the witness' information was a member of the family or related to the family, whose history the fact concerns, and was deceased or out of the State. 2 Jones on Evidence, page 652.

[4] While some of the evidence introduced may not

have properly fallen within the exception to the hearsay rule, yet there is sufficient competent and legal evidence to support the contention of the complainants that Frank Bazel, their father, was a half brother of Ellen C. Rawles, intestate, and therefore, that they are entitled to participate in the distribution of the estate of Ellen C. Rawles.

We therefore affirm the decree entered by the learned judge of the trial court in every particular, and we remand the cause to the Chancery Court of the city of Richmond to be proceeded with as the said decree directs.

*Affirmed.*