Richmond

JAMES W. CASSADY

V.

IRIS H. MARTIN, ADMINISTRATRIX OF THE ESTATE

OF RICKY DEAN MARTIN, DECEASED

April 18, 1980.

Record No. 780927.

Present: All the Justices.

*Frank O. Meade (Meade, Tate & Daniel,* on briefs), for appellant.
*Ebb H. Williams, III (James W. Haskins; Young, Kizer, Haskins, Mann, Gregory & Young, Ltd.,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

This appeal in a damage suit for wrongful death raises issues concerning proof of paternity, admissibility of evidence, and correctness of a damage instruction.

On March 19, 1977, Ricky Dean Martin, a mentally retarded 21-year-old, was fatally struck by a car driven by appellant James W. Cassady, the defendant below, when Martin attempted to cross Route 676 in Henry County. The decedent's mother, appellee Iris Martin, the plaintiff below, qualified as Administratrix of his estate and filed suit against defendant under the wrongful death statute, Code § 8.01-50.

Because defendant admitted liability, the issues at trial focused on establishing the beneficiary and the amount of damages. Plaintiff sought to establish Richard Dean Gilley, born October 21, 1976, as the child of the decedent. Plaintiff's position was that the infant was the only statutory beneficiary of the first class under Code § 8.01-53.

Regina Mae Gilley, age 21, was established as the mother of the infant. She was married to one Allen Wayne Gilley on August 5, 1974, and was still married to him on the date of the child's birth and also at the time of the proceeding.

At trial, Mrs. Gilley testified that she met the decedent on January 11, 1975, that she began living with decedent, that decedent was the father of the child, and that she had not lived with her husband for a "year or two" at the time of conception. She testified that the decedent had been with her at the hospital when the child was born and that he loved and cared for the child.

Decedent's mother, the plaintiff, testified that on the night the child was born decedent called her to announce, "I am a daddy." The plaintiff also testified that decedent had loved the child and had "looked after it" more than the mother, Mrs. Gilley.

Helen Naff, a notary public and Henry County social worker, testified that decedent had appeared before her and signed a sworn statement of paternity. She testified that she read decedent the statement before he signed it.

John Bowman, a financial counselor at the hospital where the child was born, testified that decedent came to see him after the child was delivered. Bowman said that decedent identified himself as the child's father and, as such, wanted to make arrangements to pay the hospital bill. Bowman testified that decedent executed a guarantor agreement.

Through cross-examination of decedent's mother, defendant established that Mrs. Gilley, after beginning to live with decedent, returned

one night to the apartment of her estranged husband and spent the night there. The record does not indicate the date this event transpired with relation to the date the child was born.

On the damage issue, decedent's employer testified that decedent had been hired as a production employee on October 26, 1976, and was terminated March 21, 1977, two days after his death. The employer stated that decedent had stopped work on December 18, 1976, due to a broken ankle sustained in an accident. Decedent had not worked again before his death. Testimony indicated that decedent had been paid $2.63 per hour for a 40-hour week. His attendance record showed seven days missed, three of which were excused for illness.

Economist Edmond Seifried, an expert witness, projected decedent's lost lifetime income to be $146,577. Seifried's estimate was figured on decedent's age, the minimum wage ($2.65 an hour), a 40-hour week for a 50-hour year, a 6% annual inflation/production increase, plus the assumption decedent would live to be 65 years old.

Defendant elicited testimony from Mrs. Gilley that decedent had given her only $33 for support of the child between late November, 1976, and the time of decedent's death in March, 1977.

The trial court, at the conclusion of the evidence, ruled that plaintiff had shown as a matter of law that Richard Dean Gilley was the son of the decedent Ricky Dean Martin.

The jury returned a verdict for the plaintiff, setting the damages at $50,000, from which would be deducted funeral expenses of $2,350.14 before payment to Richard Dean Gilley, the sole beneficiary. Judgment was entered on the verdict, and the case is before this court on these issues:

I.   Did the trial court err in ruling as a matter of law that Richard Dean Gilley was the sole beneficiary?

II.   Did the trial court err in permitting Regina Allen Gilley to testify to non-access of her husband?

III. Was it error to admit the paternity statements, written and oral, of the putative father, Ricky Dean Martin?

IV.   Was a prior inconsistent statement of the mother admissible?

V.   Was error committed in permitting the economist to testify?

VI.   Was the jury properly instructed as to the measure of damages?

## I. PATERNITY

■ We believe that the issue of paternity was one for resolution by the jury and that the trial court erred in ruling on the issue of paternity as a matter of law.[1]

In the case of *Carroll* v. *Sneed*, 211 Va. 640, 643, 179 S.E.2d 620, 622 (1971), this court said:

> It has been argued that interpreting the wrongful death act to include illegitimate children as beneficiaries, as this Court did in *Withrow* v. *Edwards, supra,* promotes fraudulent claims and recoveries. *But a person who claims to be a decedent's child has the burden of proving that the decedent was his parent.* We should not assume that finders of fact will not intelligently and justly resolve issues of paternity based upon the evidence before them and guided by the law. [Emphasis supplied.]

In the earlier case of *Scott* v. *Hillenberg,* 85 Va. 245, 7 S.E. 377 (1888), this court was called upon to resolve the issue of paternity with reference to an inheritance, it being contended by one side that the father did not have access since, at the time of the conception, he was serving outside Virginia in the Confederate Army. There the court laid down the rules for this type of controversy:

> The record shows, and it is not questioned, that she was born, May 15th, 1865, of Elizabeth Hillenberg, then lawful wife of Austin Hillenberg. The presumption of law is that she was legitimate. [citations omitted.]
>
> The presumption of legitimacy is not rebutted by proof of circumstances, which only create doubt and suspicion. 'To repel the presumption of legitimacy in any case, the evidence must be clear and positive. . . . Throughout the investigation the presumption in favor of legitimacy is to have its weight and influence, and the evidence against it ought to be strong, distinct, satisfactory and conclusive.' . . .
>
> 'Non-access of the husband to the wife must be proved beyond all reasonable doubt.' . . .
>
> 'The duty of the jury is to weigh the evidence against the presumption (of legitimacy) and to decide according to the preponderance.'

---

[1] For proof of paternity under Code § 65.1-66, see *Allstate Messenger Ser.* v. *James,* 220 Va. 910, 266 S.E.2d 86 (1980), this day decided.

85 Va. at 246-47, 7 S.E. at 378. *See also* C. Friend, The Law of Evidence in Virginia § 129 (1977); M. Marshall, J. Fitzhugh, Jr. and J. Helvin, The Law of Evidence in Virginia and West Virginia § 240 (C. Nash ed. 1954) [hereinafter cited as Nash, The Law of Evidence].

In *Gibson* v. *Gibson*, 207 Va. 821, 825, 153 S.E.2d 189, 192 (1967), Justice Spratley summarized the law in this language:

> A presumption of law exists in favor of the legitimacy of a child born in wedlock; but the presumption may be rebutted by other testimony. Improbability of known access by the husband merely of itself is not sufficient to repel the presumption; but when the evidence forces the conclusion of nonaccess beyond all reasonable doubt, it is sufficient to repel the presumption. [Citations omitted.]

In our view the jury should have been instructed in accordance with the foregoing authorities, and it was for the jury to say whether the presumption of legitimacy had been overcome.

## II. TESTIMONY AS TO NON-ACCESS

██ Counsel for Cassady contends that the wife is not permitted to testify to non-access of her husband and, in effect, bastardize her child. This was once the rule, *see* Comment, The Mansfield Rule of Nonaccess, 21 Wash. & Lee L. Rev. 146 (1964); Nash, The Law of Evidence § 58, *supra;* C. Friend, The Law of Evidence in Virginia § 58. But the rule is no longer applicable, *T* . . . v. *T* . . ., 216 Va. 867, 869, 224 S.E.2d 148, 150 (1976); *Gibson* v. *Gibson, supra,* and we thus hold that the action of the trial court in overruling the objection to the testimony of Regina Allen Gilley was correct.

## III. PATERNITY STATEMENTS OF PUTATIVE FATHER

██ As previously indicated, the decedent signed under oath a complete statement of paternity and this would be admissible in a proceeding under Code § 20-61.1. In addition, other statements of the decedent to his mother and the hospital administrator were admitted. Counsel for Cassady objected on the ground that this evidence violated the hearsay rule. The attorney for the administratrix countered that this evidence came within the pedigree exception to the hearsay rule, citing the term as defined in *Rawles* v. *Bazel*, 141 Va. 734, 755, 126 S.E. 690, 696 (1925):

Testimony concerning pedigree is well recognized as an exception to the hearsay rule, provided that no other better evidence can be obtained, and that the declarant or source of the witness' information was a member of the family or related to the family, whose history the fact concerns, and was deceased or out of the State.

*See also Gregory* v. *Baugh,* 25 Va. (4 Rand.) 611 (1827); *Peterson* v. *Ankrom,* 25 W. Va. 56 (1884).[2]

But the rule, by its own definition, is not applicable unless no other better evidence can be obtained, and that is not the situation here where Regina Allen Gilley was a live witness, under oath, and subject to cross-examination. We hold that the pedigree exception is not applicable in this situation.

## IV. PRIOR INCONSISTENT STATEMENT OF REGINA ALLEN GILLEY

■ Throughout the proceeding the mother admitted having stated to the welfare worker that the father could have been six or seven men. The trial court did not permit this evidence to go to the jury, and foreclosed cross-examination of the mother by counsel for Cassady on this issue. This was error.

In *Neblett* v. *Hunter,* 207 Va. 335, 340, 150 S.E.2d 115, 119 (1966), this court said:

It is generally held in Virginia and elsewhere that, after a proper foundation has been laid, the credibility of a witness may be impeached by proof of statements made by him on some prior occasion, inconsistent with or contradictory of the evidence he has given on the trial. The prior inconsistent statements, however, may be given in evidence only to impeach the credibility and not as evidence on any fact touching the issue to be tried. [Citations omitted.]

*Cf.* C. Friend, The Law of Evidence in Virginia § 28.

The credibility of the mother was a critical issue. Her admitted false statement, very relevant in this case, should have been proven before the jury and given such weight as the jury thought proper.

―――――――

[2] "Pedigree, of necessity and from the nature of things, is open to proof by hearsay [*sic*], in respect to all family incidents *as to which no living witness can be found.*" 25 W. Va. at 61 (emphasis added).

## V. EXPERT TESTIMONY

■ The wrongful death statute was amended in Acts 1977, chs. 460 and 617, after this cause of action accrued, to this effect: "Competent expert testimony shall be admissible in proving damages recoverable under 2 above." [3]

In this case, we feel that the evidence as to reasonably expected loss of decedent's income was inadmissible as a matter of law as being too speculative. *Cf.* Edward, The Economist as an Expert Witness in Personal Injury and Wrongful Death Cases, 3 Va. B.A.J. 16 (1977). This decedent had a mental age of nine and was a functional illiterate who could only write his name. The decedent's only employment noted in the record commenced five days after the child was born, and continued for only eight weeks, during which time he lost six or seven days. His mother was of the opinion that he only worked half days because of sickness. There was no showing of the effect of the accident of December 18 on his health, although he was scheduled to return to work two days after his death.

## VI. DAMAGE INSTRUCTION

■ As the trial court indicated, Instruction No. 1[4] was a literal

---

[3] *Code § 8.01-52 (formerly § 8-636.1) provides in pertinent part:*

**Amount of damages.**—The jury or the court, as the case may be, in any such action under § 8.01-50 may award such damages as to it may seem fair and just. The verdict or judgment of the court trying the case without a jury shall include, but may not be limited to, damages for the following:

. . . .

2. Compensation for reasonably expected loss of (i) income of the decedent and (ii) services, protection, care and assistance provided by the decedent;

. . . .

. . . Competent expert testimony shall be admissible in proving damages recoverable under 2 above.

[4] "The Court instructs the jury, that from the evidence and the other instructions of the Court, the jury may award such damages as to it may seem fair and just to Richard Dean Gilley, who is the son of the decedent, Ricky Dean Martin.

The Court further instructs the jury, that your verdict shall include, but may not be limited to, damages for the following:

(1) Such sum as to you may seem fair and just by way of sorrow, mental anguish, and solace which may include loss of society, companionship, comfort, guidance, kindly offices of the and advice of the decedent, which may have resulted from the death of the decedent.

(2) Compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent.

(3) Funeral expenses of the decedent in the amount of $2,350.14."

tracking of Code § 8.01-52 (formerly § 8-636.1) and for that reason he thought was free of objection. The present language of the statute became effective July 1, 1974, and is the source of the language used in the instruction.

However, the general objective of the wrongful death statute has not been changed and was stated in *Wilson* v. *Whittaker,* 207 Va. 1032, 1036, 154 S.E.2d 124, 128 (1967): "The object of the statute is to compensate these beneficiaries for their loss occasioned by the decedent's death." The words "damage" and "loss" clearly indicate a damage and loss sustained by someone, and we think the loss means the loss to the statutory beneficiary in this case. Certainly, the intent of the statute is not to accumulate an estate for the decedent, *Conrad* v. *Thompson,* 195 Va. 714, 80 S.E.2d 561 (1954), but to compensate for a loss suffered by those entitled to recover, and the instruction should be so modified.

For the foregoing reasons the judgment of the trial court is reversed and the case is remanded for a new trial on the issues of paternity and damages only.

*Reversed and remanded.*