# CIRCUIT COURT OF WISE COUNTY

Andrea Beth Branham, Adm'x

v.

Michelle Maggard

February 27, 1997

Case No. L96-53

BY JUDGE FORD C. QUILLEN

For the purposes of this memorandum, the decedent died in Wise County as a result of an automobile accident. At that time, he was twenty-five years of age and was the father of two minor children, one child being six years of age and the other being two years of age. He was married, and at the time of his death, the decedent and his wife were in the process of getting a divorce. The defendant in this matter alleges that there was no child support nor spousal support being paid at the time of the accident.

The decedent was born on April 4, 1970, and died on October 8, 1995. He had a life expectancy of 49.3 years and work expectancy of 34.4 years.

The issue before the Court deals with the expert testimony of Dr. Robert Bohm, proposed to be offered by the plaintiff at the trial. The issue is whether or not Dr. Bohm would be qualified as an expert to give a projected figure of the decedent's entire loss of wages during his work years, before the jury in this case.

The section of the Code we are dealing with is § 8.01-52, concerning the amount of damages in a wrongful death case. This Code section says the jury or the court may award such damages as to it may seem fair or just, but may not be limited to the following:

Compensation for reasonably expected loss of (i) income of the decedent (ii) services, protection, care and assistance provided by the decedent.

This statute was amended to allow that competent expert testimony should be admissible in proving damages recoverable for this loss.

The thrust of the defendant's argument is that the monetary loss to these two dependents (and for the purposes of argument, the Court will consider the wife as well as a dependent since the divorce decree was not final) would be limited to their evidence as to the dependents' reasonably expected loss of decedent's income, meaning such loss as the dependents have suffered or may suffer. If this was the case, the Court believes that the ability of an expert to testify on this matter would be almost a nullity, because almost never could an expert testify as to the decedent's lost wages couched in terms of the decedent's expectations. It appears to the Court that before a jury could determine what a dependent could reasonably expect to receive from a decedent, an element for consideration by the jury would be how much total income was available.

In trying to find the answer to this question, and after hearing arguments and researching, the Court looks first at the 1991 case of *Johnson, Adm'r v. Smith*, 241 Va. 396 (1991). This is a case which Chief Justice Carrico reversed and sent back for trial because the jury refused to give any award for sorrow, mental anguish, and solace. The jury had given an award for loss of income, $50,000 to the widow and $20,000 for loss of service and protection and the funeral bills, and awarded each child $30,000 for loss of income. A review of this case shows there was an expert witness and the expert witness stated that the decedent had been employed by Amtrak for five years as a commissary worker, earning $26,915 annually. The expert witness further estimated the loss of income resulting from Johnson's death at $900,000 exclusive of the amount Johnson earned from a lawn maintenance business he conducted on the side. The decedent's supervisor had previously testified that the decedent was a model employee.

It seems clear from this case that the expert witness issue was never raised before the Supreme Court and that the Court allowed, upon some background information being placed before the jury, the expert to testify to the estimated loss of income from the death.

Based on the dictum in this case, the Court is of the opinion that this is admissible evidence provided there can be some reliability of the particular facts, as in the *Johnson* case, the decedent had a five-year work record, was in good health, etc.

The defendant is protected in that he can cross-examine the plaintiff's expert on what income is reasonably expected to be received by the plaintiffs from the decedent and/or offer whatever expert testimony he desires. In the

*Johnson* case, the defendant argued his effective cross-examination as a reason that the jury did not award any solace.

The Court in the *Johnson* opinion, stated:

> In support of the jury's action, the defendants say that their cross-examination of the plaintiff's expert witness raised "serious questions as to the soundness of his opinion concerning the projected loss of income of the decedent."

So it appears from this language in the *Johnson* decision, the manner in which this is challenged is through cross-examination. Of course, in this case, the Court would give leeway for the defendant to cross-examine as to how much of the money would go for the benefit of the wife or children, based upon all the circumstances then existing.

The Court finds another case revealing in this matter which further leads the Court to believe that the matter is not one of limiting the evidence. This case is *Cassady v. Martin, Adm'x*, 220 Va. 1093 (1980). There, expert testimony was held inadmissible but not because it is improper to have this evidence before the jury. In the *Cassady* case, it was held inadmissible because the decedent had a mental age of nine, was functionally illiterate, could only write his name, and his only employment commenced five days after his child was born and continued only eight weeks, during which time he lost six to seven days of work. For those reasons, the Court held that the decedent did not have a "track record" upon which an expert witness could draw a conclusion and project a loss of income.