# Richmond

IRENE D. CONRAD v. SADIE THOMPSON, ADMINISTRATRIX OF
THE ESTATE OF WILLIE OWENS, DECEASED.

March 15, 1954.

Record No. 4174.

Present, Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*E. L. Ryan, Jr.* and *White, Ryan & Holland,* for the plaintiff in error.

*Kanter & Kanter, H. Lee Kanter* and *W. H. Starkey,* for the defendant in error.

Smith, J., delivered the opinion of the court.

In an action for wrongful death arising out of an automobile accident in which Willie Owens was killed, the administratrix of his estate has recovered a verdict and judgment of $7,500 against Mrs. Irene D. Conrad, hereafter referred to as defendant, who is here seeking to have that judgment reversed on the grounds that: (1) the evidence was insufficient to show primary negligence on her part, (2) deceased was guilty of contributory negligence as a matter of law, (3) the evidence did not justify an instruction based on the pedestrian right-of-way statute, Code, § 46-244, (4) there was no evidence to support an instruction on last clear chance.

The facts, stated in the light most favorable to the plaintiff and as they appear from the testimony of a State Trooper and seven eye-witnesses, and from certain exhibits, show that on February 1, 1952, at approximately 4:15 p. m., the defendant, accompanied by her two small children, was driving her automobile at 50 miles per hour eastwardly on U. S. Highway No. 58, referred to locally as the Virginia Beach Boulevard, approximately one mile west of Virginia Beach in Princess Anne county. At this point the speed limit is 50 miles per hour, and the highway is 27 feet wide

and divided into three clearly marked lanes. The deceased had crossed the road from the north to the south side where there is an intersecting dead-end dirt road and several mail boxes. After taking a letter from one of the mail boxes he looked both to his right and left before proceeding back across the highway, at which time the defendant's automobile was about 400 feet away. Upon entering the middle lane of the highway he was struck by the right side of defendant's front bumper and received serious injuries which resulted in his death on June 19, 1952. There was no evidence of skid marks and the car travelled approximately 75 yards beyond the point of collision before stopping. The day was warm and clear and the road from the point of impact west toward Norfolk, from which direction defendant was coming, was straight and the view unobstructed for at least 1,500 yards.

The defendant testified that, "All I ever saw [of the deceased] was the back of his head. He was looking at Mr. Weaver [driver of a car approaching from the east] I guess, down from the other way." Then in response to a question as to what she did when she first saw him, she said: "Well, my first impulse was that if I put on my brakes I would just run right over him. My senses didn't tell me to put on my brakes and turn at the same time; so I figured if I turned around him, I would miss him. And I sat on my horn. And he just didn't even—he never—didn't even look; he didn't do anything. So I turned, and hit him."

The administratrix, who was corroborated by another witness, testified that while she was sitting in the hospital two days after the accident the defendant entered into a conversation with her, in the course of which the defendant said: " 'Well, I have been dreaming about him [deceased] all night * * * I could see him all in my sleep. * * * When I saw your daddy, I saw your daddy long before I got to him and he was far distance enough away that I could have stopped, I could have avoided the wreck.' " Then in response to a question as to whether the defendant gave any

reason for not stopping, the administratrix said: "No, she didn't say. The only reason she say, she was distant far enough away from my father, she thought my father was going to turn around and go back."

Because of our decision to remand the case on another ground it is unnecessary to discuss at length defendant's two contentions that the evidence is insufficient to show primary negligence on her part and that the deceased was guilty of contributory negligence as a matter of law.

A pedestrian on entering a highway is not required to await the passage of all automobiles that may be in sight. His duty is to await the passage of those which are so near or approaching at such rate of speed that a person exercising reasonable care for his own safety would not attempt to cross. If he undertakes to cross without looking, or, if he looks and fails to see or to heed traffic that is in plain view and dangerously close, he is guilty of negligence as a matter of law. *Rhoades* v. *Meadows*, 189 Va. 558, 54 S. E. (2d) 123. But if reasonable men may honestly differ on the conclusions to be drawn from the evidence as to all kinds of negligence, the question is not one of law, but one of fact for the jury under proper instructions. *Pioneer Construction Co.* v. *Hambrick*, 193 Va. 685, 70 S. E. (2d) 302; *Steele* v. *Crocker*, 191 Va. 873, 62 S. E. (2d) 850.

Suffice it to point out that in the instant case the evidence is conflicting as to: whether the defendant made certain admissions; whether the deceased was struck in the middle or south lane of the highway, or stepped in front of the defendant's automobile; whether the deceased looked both to his left and right before entering the highway; and as to what was the position of defendant's automobile when deceased entered the road, its distance being variously estimated to be from two or three car lengths to 600 feet. Clearly, on evidence so conflicting, the questions of negligence and contributory negligence were questions upon which reasonable men might differ, and were therefore questions of fact for the jury.

■ This brings us to defendant's contention that the court erred in granting over her objection and exception Instruction P. 1. which reads as follows:

"The court instructs the jury that if you believe from the evidence that Willie Owens started across U. S. Highway No. 58 at its intersection with the dirt road at Atlantic Park before Mrs. Conrad's automobile reached that intersection, then Willie Owens had the right of way over the said automobile and it was the duty of the driver to change her course, slow down, or come to a complete stop, if necessary, to permit Willie Owens to safely make the crossing, and if you believe that on the occasion in question Willie Owens was exercising due care for his own safety and that the defendant disregarded her duty, as has been stated, and that her disregard was the proximate cause of his death, you must find for the plaintiff."

This instruction is based on Code, § 46-244,[1] which deals with a driver upon a highway, (1) within a *business*, or (2) *residence* district; and provides that in such districts he shall yield the right-of-way to a pedestrian crossing the highway, (a) within any clearly marked crosswalk, or (b) any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block.

The purpose of this statute is to afford pedestrians crossing highways at the places designated therein a right-of-way

---

[1] "The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices.

"No pedestrian shall enter or cross an intersection regardless of approaching traffic.

"The drivers of vehicles entering, crossing or turning at intersections shall change their course, slow down or come to a complete stop if necessary to permit pedestrians to safely and expeditiously cross such intersection."

over vehicular traffic and to that extent give them some degree of protection from its dangers. *Reese* v. *Snelson*, 192 Va. 479, 65 S. E. (2d) 547. Except in places where favored positions are assigned by law, the rights of pedestrians and motorists to use the highways are equal and their duties are mutual and reciprocal. *Rhoades* v. *Meadows, supra; South Hill Motor Co.* v. *Gordon*, 172 Va. 193, 200 S. E. 637.

Plaintiff, in support of Instruction P. 1, has placed great reliance on *Nelson* v. *Dayton*, 184 Va. 754, 36 S. E. (2d) 535, which construes section 2154(126) of the Code of 1942. However, this section did not include the limitation with reference to "a highway within a business or residence district."

To enjoy the privileges of the right-of-way under Code, § 46-244, a pedestrian must prove that the scene of the accident was within a business or residence district as defined by Code, §§ 46-185,[2] and 46-186.[3] This cannot be left to speculation and surmise but must be clearly established.

In our search of the testimony and examination of the pictorial exhibits, we are unable to find any evidence that the scene of the accident was within a business or residence district. Moreover, there is no evidence that the accident occurred at a "clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block." There being no evidence to show that this accident occurred within either a business or residence district, the giving of Instruction P. 1 was prejudicial error.

---

[2] " 'Business district' defined.—The territory contiguous to a highway where seventy-five per centum or more of the total frontage, on both sides of the highway, for a distance of three hundred feet or more is occupied by buildings actually in use and operation for business purposes shall constitute a business district for purposes of this title."

[3] " 'Residence district' defined.—The territory contiguous to a highway not comprising a business district where seventy-five per centum or more of the total frontage, on both sides of the highway, is mainly occupied by dwellings or by dwellings and buildings in use for business purposes shall constitute a residence district for purposes of this title."

■ We next come to defendant's contention that it was error to grant an instruction on last clear chance because "there is no evidence of a last clear chance and the evidence is incredible." The instruction on that doctrine is P. 8, which reads as follows:

"The Court instructs the jury that even though they may believe from the evidence that the plaintiff's intestate was guilty of contributory negligence, yet if they further believe from the evidence that Mrs. Conrad knew of Willie Owens' danger or by the exercise of ordinary care should have known of his danger in time to have stopped her car and avoided striking him, it was her duty to do so, and if they believe from the evidence that she failed to exercise this duty, then she is liable and your verdict should be for the plaintiff."

Objection was made to the form of the instruction, but this we do not consider because it was not saved as required by Rule 1:8.

Whether the doctrine of last clear chance applies is to be determined by the facts of the particular case. It does not supersede the law of contributory or concurring negligence. *Hardiman* v. *Dyson*, 194 Va. 116, 72 S. E. (2d) 361; *Keatts* v. *Shelton*, 191 Va. 758, 63 S. E. (2d) 10.

Mr. Chief Justice Hudgins said in *Umberger* v. *Koop*, 194 Va. 123, 131, 72 S. E. (2d) 370: "In order for a defendant to be held liable under this doctrine [last clear chance], it must appear from the evidence that the plaintiff has negligently placed himself in a position of imminent peril and he is either unaware of his perilous situation, or unable to escape therefrom, or both, and defendant was apprised of his presence and realized, or, in the exercise of reasonable care, should have realized his danger in time to avoid the accident, and failed to do so. *Anderson* v. *Payne*, 189 Va. 712, 54 S. E. (2d) 82; *Lanier* v. *Johnson*, 190 Va. 1, 55 S. E. (2d) 442; *Burton* v. *Oldfield*, 194 Va. 43, 72 S. E. (2d) 357."

Since there is evidence that the defendant admitted in statements to two of the witnesses that she saw the de-

ceased in danger and unaware of pending calamity in time to avoid striking him, a proper instruction on last clear chance was warranted. However, on a retrial Instruction P. 8 in its present form should not be given. If deceased was guilty of *contributory* negligence plaintiff could not recover in any event. Also, if the defendant saw that deceased was in a situation of helpless or unconscious peril, she must have had time to avoid the accident by exercising ordinary care.

We note that during the trial of the case counsel stipulated that the hospital, medical and funeral expenses amounted to $2,506.86. The verdict of the jury was as follows: "We the jury find for plaintiff—in sum of $7500.00, Seven Thousand five Hundred and 00/100, this amt. included all expense, Hospital Bill, Doctor's Bills and Burial expenses totaling $2506.86." Since the jury failed to direct to whom and in what proportion the verdict should be distributed, the court in its final judgment directed that the sum of $7,500 "be paid to the children of the decedent, in equal shares, after the payment of costs and attorneys fees." The court's judgment follows Code, § 8-638, which requires that the recovery be distributed to the beneficiaries "after the payment of costs and reasonable attorney's fees." This statute also provides that an award "shall be free from all debts and liabilities of the deceased," therefore the hospital, medical and funeral expenses are not recoverable and are not proper elements of damages. We have frequently held that an action for wrongful death is not for the benefit of the decedent's estate, but for certain near relatives. *Patterson v. Anderson*, 194 Va. 557, 74 S. E. (2d) 195; *Porter v. Va. Elec. & Power Co.*, 183 Va. 108, 31 S. E. (2d) 337. See also, *Wolfe v. Lockhart*, 195 Va. 479, 78 S. E. (2d) 654.

We are of opinion that Instruction P. 1 was erroneous and prejudicial and for that reason the judgment is reversed and a new trial awarded.

*Reversed and remanded.*