## Richmond

MORTIMER M. MARSHALL, ADMINISTRATOR, ETC.

V.

RONALD IRVIN GOUGHNOUR

August 28, 1980.

Record No. 781101.

Present: All the Justices.

B. *Waugh Crigler* (*Davies, Crigler, Barrell & Will,* on brief), for appellant.

*John J. Brandt* (*Slenker, Brandt, Jennings & Johnston,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

John Thomas Long, an employee of the Virgina Department of Highways and Transportation, was performing his assigned duties when he was struck and fatally injured by an automobile operated by Ronald Irvin Goughnour. Long's personal representative brought this wrongful death action for damages alleged to have been caused by Goughnour's negligence.

A jury trial resulted in a verdict for the defendant. The trial court, overruling the plaintiff's motion to set aside the verdict, entered final judgment for Goughnour. On appeal, the personal representative challenges the rulings of the trial court in refusing to admit evidence as to Long's wages and in giving an unavoidable accident instruction to the jury. As Goughnour has been awarded a jury verdict, we will summarize the evidence in the light most favorable to him.

The accident occurred shortly before 3:00 p.m. on July 21, 1977 when Long and a fellow employee, Russell Waldren, were working on the Brandy Station exit ramp leading from the northbound lanes of Route 29 in Culpeper County. The ramp extended uphill in a sharp curve to the right for drivers using this exit.

Waldren testified that prior to the accident he had been sweeping

sand and gravel from the ramp with a power broom attached to a tractor while Long was using a hand broom to sweep within a foot or so of the curb where the power broom could not reach. Waldren parked the broom tractor on the right-hand shoulder off the hard surface of the ramp, helped Long sweep by hand, and began to walk diagonally across and down the incline of the ramp towards the parked tractor. He saw a car come around the curve "a little bit wide" and heard a "faint tire noise". Waldren could see that Long was working at the fog line on the left-hand side of the ramp and was facing away from the car, but he could not determine on which side of the line Long was standing. Although the car blocked Waldren's view of the impact, he heard a "thump", observed the vehicle swerve to the right, and then saw Long's body lying in the road. Long was wearing a safety hat and an orange safety vest at the time of the accident. There were no safety cones or flags on the ramp. According to Waldren, on Route 29 approximately 500 feet south of the exit ramp there were signs posted warning motorists of highway work ahead. His testimony as to the location of other warning signs was confusing.

Waldren testified that after the collision the automobile stopped in the middle of the road and the driver, Goughnour, got out. In discussing the accident with Waldren as they awaited the arrival of the rescue squad, Goughnour said that before the collision he had been trying to get a card to write something down concerning his business.

The investigating officer, State Trooper A. P. Edwards, testified that Long could have been seen at a distance of 245 feet by an approaching driver, if the driver had been looking to his right. Edwards introduced into evidence several photographs that he had taken at the scene before Long's body was removed. One or more of these photographs showed the left-hand fog line close to the left curb of the ramp and the broom tractor off the hard surface on the right side. Edwards also testified to two conversations he had with Goughnour, in one of which Goughnour said that while he had been "fumbling" in his pocket just before he saw Long he did not take his eyes off the road. The officer did not see any warning signs on the ramp. He identified in the photographs two skid marks located on either side of the left-hand fog line. As measured by Edwards, the width of the traffic lane on the ramp at the site of the accident was 16 feet and the total width of the roadway at that location was 27 feet. The sky was hazy and the road was dry.

E. J. Oulette, Assistant Resident Engineer of the Culpeper District of the Department of Highways and Transportation at the time of the accident, arrived approximately 30 minutes after the collision and made an investigation for the Department. His diagram of the site of the accident showed a sign marked "Road work ahead" posted on Route 29 approximately 800 feet south of the exit ramp and another marked "Men working 25 MPH" with a red flag on it, located on the right side of the deceleration lane just before it merged into the exit ramp. Although they were available, no safety cones were on the ramp when Oulette made his investigation.

Goughnour testified that there were no safety cones, flagmen or other warnings on the exit ramp. He vaguely remembered seeing one sign posted on Route 29 warning of road work, but he did not see any warning sign on the deceleration lane. He was not familiar with the exit. Goughnour's primary purpose in leaving Route 29 was to purchase gasoline, but he also planned to telephone a business associate in Reston. He had intended to use an exit south of the Brandy Station exit, but he had inadvertently passed the turn-off. When he saw the Brandy Station exit sign, he reached in his pocket for a piece of paper to make sure that it contained the telephone number of his business associate, but he did not take his eyes off the road. According to Goughnour, he turned into the exit ramp, saw in front of him a sign with an arrow indicating a sharp curve to his right, placed both hands on the steering wheel, and applied his brakes. He "turned the corner and there was a guy, right in the middle of the road". He "stood on the brake and . . . cut the wheel", but heard the "thud" of the collision. The impact dented the top of the left front fender of Goughnour's automobile.

Instructions on negligence and contributory negligence were given to the jury without objection. Moreover, an instruction was given, without objection, informing the jury that the mere fact that there has been an accident does not entitle the plaintiff to recover, but in order to recover the burden is upon the plaintiff to prove by a preponderance of the evidence that the defendant was negligent and that his negligence was a proximate cause of the accident. As to Instruction No. 15,[1] however, tendered by Goughnour, counsel for

---

[1] "INSTRUCTION NO. 15

"The Court instructs the jury that Virginia law recognizes that some accidents are unavoidable in that they would have occurred despite the exercise of reasonable care by the operator of the motor vehicle. If you believe from the evidence in this case that the accident was unavoidable as to the defendant and was not caused by negligence on his part, then you should find your verdict for the defendant."

the personal representative said, "Your Honor, I don't believe the unavoidable accident doctrine would apply in this case". The trial court gave the instruction as consistent with the defendant's theory of the case.

■ Goughnour first contends that counsel for the personal representative failed to object to Instruction No. 15 with reasonable certainty as required by Rule 5:21, and that we should not now notice the objection. We disagree.

The purpose of the rule is to give the trial court an opportunity to rule intelligently and avoid unnecessary appeals, reversals, and mistrials. *Reid* v. *Baumgardner,* 217 Va. 769, 773, 232 S.E.2d 778, 780 (1977). When counsel for the personal representative challenged the applicability of the unavoidable accident doctrine, the trial court replied that Goughnour's testimony, if believed, would make the doctrine applicable, because, according to Goughnour, Long was in the middle of the road when Goughnour "looked up" and saw him, and the accident was unavoidable on Goughnour's part. There could have been no misunderstanding by the trial court of the basis for the objection. Subsequently, in his motion to set aside the verdict, the plaintiff, citing *Bickley, Adm'x* v. *Farmer,* 215 Va. 484, 211 S.E.2d 66 (1975), and *Batts* v. *Capps,* 213 Va. 174, 191 S.E.2d 227 (1972), assigned error to the granting of Instruction No. 15 on the ground that there was no evidence to support it. The trial court was thus afforded the opportunity to reconsider its decision to grant the unavoidable accident instruction. We hold that the objection to the instruction was made with sufficient specificity to survive the strictures of Rule 5:21. We now determine whether the trial court erred in granting the instruction.

■ We have clearly established the principle that in automobile accident cases it is rarely permissible to give an unavoidable accident instruction. Nevertheless, we have declined to abolish the doctrine of unavoidable accident or to limit it to cases involving accidents resulting from unknown causes. *Holbert* v. *Evans,* 209 Va. 210, 163 S.E.2d 187 (1968).

In *Holbert,* we approved the giving of an unavoidable accident instruction. In that case, however, because of his age the infant plaintiff could not be charged with negligence and there was evidence from which the jury reasonably could have found the defendant free of negligence. Thus the jury could find that the accident occurred without negligence. *See Barner* v. *Whitehead,* 204 Va. 634, 133

S.E.2d 283 (1963); *Mawyer* v. *Thomas,* 199 Va. 897, 103 S.E.2d 217 (1958).

Unless the evidence supports a reasonable theory that the accident could have occurred notwithstanding the exercise of due care by the parties involved, it is error to give an unavoidable accident instruction. *Bickley, Adm'x* v. *Farmer,* 215 Va. 484, 488, 211 S.E.2d 66, 69-70 (1975); *Batts* v. *Capps,* 213 Va. 174, 175-76, 191 S.E.2d 227, 228 (1972). We recently held, therefore, that where the jury could have found from the evidence that a two-car collision resulted either from the negligence of one of the drivers or from the concurring negligence of both the court committed reversible error in granting an unavoidable accident instruction. *Damron* v. *Hagy,* 220 Va. 455, 457, 258 S.E.2d 517, 518 (1979).

Applying these principles to the evidence in the present case, we conclude that the trial court erred in granting Instruction No. 15. The jury could have found from the evidence that the accident resulted from the negligence of Goughnour, the negligence of Long, or the concurring negligence of both. Goughnour maintains that the jury accepted his testimony as to warning signs and rejected that of Oulette. The transcript, however, reveals no incompatibility in the testimony of these two witnesses. Goughnour denied that there were warning signs on the ramp, and no one contradicted that statement. Oulette testified that there was a warning sign at the right side of the deceleration lane, not on the ramp, and Goughnour merely denied having seen one in that location, just as he denied having seen the parked broom tractor that other uncontradicted evidence placed in plain view off the hard surface of the ramp.

We reject Goughnour's argument that any error in granting Instruction No. 15 was rendered harmless by the wording of the second sentence of the instruction that required the jury, in order to return a verdict for him, to find not only that the accident was unavoidable as to the defendant but also that he was free from negligence. With the unavoidable accident theory exposed to the jury, we cannot conclude that the error was rendered harmless by the qualifying language. The trial court improperly injected the unavoidable accident alternative into a case which necessarily involved negligence.

■ As the case will be remanded for a new trial, we turn to the question raised by the trial court's ruling that evidence of the decedent's wages and prospective loss of income was inadmissible absent dependency.

At the time of his death, Long was almost 64 years of age. He was survived by an illegitimate son, John Thomas Kirkley, age 36, who did not live with his father and was not a dependent of Long. There was evidence that Long and his son were on good terms and that the son often visited his father.

The personal representative, during the presentation of his evidence, sought to introduce evidence as to Long's wages at the time of the fatal accident and the retirement payments to which the decedent would have been entitled at age 65 and at age 70. Goughnour objected to the admissibility of this evidence on the ground that Long's sole statutory beneficiary was his son who was not a dependent. The personal representative conceded that there was no evidence that at the time of his death Long was contributing anything to the son's support, and the trial court thereupon sustained the objection and ruled the evidence inadmissible. No proffer of the excluded evidence was made for the record. The ruling of the trial court was implemented in the damage instruction[2] which, over objection by the personal representative, eliminated from the jury's consideration any award for loss of income.

The Virginia wrongful death statute has been amended from time to time. Prior to 1968, it provided in general terms for the award of such damages as to the jury may seem "fair and just". Unlike Lord Campbell's Act, upon which it was based, and the wrongful death statutes in most other states, the Virginia statute contained no words of limitation restricting an award to "merely pecuniary damages". *Matthews* v. *Hicks, Adm'r.*, 197 Va. 112, 118, 87 S.E.2d 629, 633 (1955). In 1968, the statute was substantially amended to provide for an award comprising specific items. A maximum of $25,000 was authorized "for solace", and in addition to other specified items, the jury was permitted to award not more than $50,000 "as shall equal the financial or pecuniary loss sustained by the dependent or dependents. . . ." Acts 1968, c. 485. We construed this provision to require a showing of actual dependency, either total or partial. *Pugh* v. *Yearout*, 212 Va. 591, 595, 186 S.E.2d 58, 62 (1972).

---

[2] "INSTRUCTION NO. 11

"The Court instructs the jury that if from the evidence and other instructions of the Court you find your verdict in favor of the Plaintiff, you shall award such damages as you may deem fair and just and my (sic) include, but are not limited to:

"1. Such sorrow, mental anguish and solace which may include loss of society, companionship, comfort, guidance, kindly offices and advice of the John Thomas Long which may have resulted from his death to: John Thomas Kirkley;

"2. Compensation to John Thomas Kirkley for any reasonably expected loss of services, protection, care and assistance provided by John Thomas Long; . . . ."

The statute was again amended in 1974. Code § 8-636.1 (Cum. Supp. 1974). Without changes relevant to this case the statute has since been renumbered as Code § 8.01-52 (Repl. Vol. 1977) to read in pertinent part as follows:

> The jury or the court, as the case may be, . . . may award such damages as to it may seem fair and just. The verdict . . . shall include, but may not be limited to, damages for the following:
>     1. Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent;
>     2. Compensation for reasonably expected loss of (i) income of the decedent and (ii) services, protection, care and assistance provided by the decedent;

* * *

The personal representative argues that, since the 1974 amendment eliminated the requirement that financial or pecuniary loss be limited to that suffered by dependents, the statute has reverted to its pre-1968 status and is subject to no such limitation. We agree, but we do not reach the result sought by the personal representative.

In *Cassady* v. *Martin,* 220 Va. 1093, 266 S.E.2d 104 (1980), the statutory beneficiary in the wrongful death action was alleged to be an infant illegitimate son. We reversed the trial court and remanded the case for a new trial on the questions of paternity and damages. In respect to damages, we said that the 1974 amendment did not change the wrongful death statute's general objective, the compensation of statutory beneficiaries for their loss occasioned by the decedent's death, as stated in *Wilson* v. *Whitaker,* 207 Va. 1032, 1036, 154 S.E.2d 124, 128 (1967). Although the damage instruction given in *Cassady* tracked the language of Code § 8.01-52, we directed that upon retrial the instruction be modified to limit the compensation for loss to that suffered by the statutory beneficiary. *See also Carroll* v. *Sneed,* 211 Va. 640, 642-43, 179 S.E.2d 620, 622 (1971); *Mullins* v. *Seals,* 562 F.2d 326 (4th Cir. 1977).

In summary, we construe the damage provision of the statute to require proof of loss by the statutory beneficiary or beneficiaries. Dependency is not a prerequisite. In the present case, there was no evidence proffered as to loss of income suffered or reasonably expected to be suffered by the statutory beneficiary as a result of Long's

death. Indeed, it appears from the record that counsel for the personal representative conceded that he had no such evidence to adduce. As we have stated before, the intent of the pre-1968 statute was not to accumulate an estate for the decedent. *Conrad* v. *Thompson,* 195 Va. 714, 80 S.E.2d 561 (1954). We perceive no legislative intent to alter this purpose by the 1974 amendment. Accordingly, we hold that the trial court, while incorrectly basing its ruling upon non-dependency, did not err in excluding evidence as to Long's wages and prospective retirement benefits and in conforming the damage instruction to the evidence before the jury.

For the error in granting the unavoidable accident instruction, we will reverse the judgment of the trial court and remand the case for a new trial consistent with the views expressed herein.

*Reversed and remanded.*