## RAVENWOOD TOWERS, INC., ET AL.

### v.

## EDNA M. WOODYARD

Record No. 911181

June 5, 1992

Present: All the Justices

*Gary Brooks Mims (Brault, Palmer, Grove, Zimmerman, White & Mims*, on briefs), for appellants.

*R. Craig Jennings (Slenker, Brandt, Jennings & Johnson*, on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

In this slip-and-fall case, we determine whether the trial court erred in (1) allowing the testimony of an ophthalmologist, and (2) refusing to rule that the plaintiff was contributorially negligent as a matter of law.

## I

Edna M. Woodyard sued Ravenwood Towers, Inc., and Smithy-Braedon Property Company (collectively, Ravenwood) to recover damages for personal injuries Woodyard sustained when she fell while entering a misaligned elevator. Ravenwood Towers, Inc., is the owner of an apartment building known as Ravenwood Towers, and Smithy-Braedon Property Company is the management company for the building.

In her motion for judgment, Woodyard alleged that Ravenwood knew, or should have known, of the defect and negligently failed to

warn her of the defect or to take precautionary and corrective measures relating to it. Ravenwood denied that it was negligent and alleged that Woodyard was guilty of contributory negligence.

The case was tried to a jury, and, at the close of Woodyard's case and again at the conclusion of all the evidence, Ravenwood moved the trial court to strike Woodyard's evidence. The trial court took both motions under advisement and submitted the case to the jury. The jury returned a verdict in favor of Woodyard and awarded her damages in the amount of $58,782.53.

Thereupon, Ravenwood renewed its motion to strike Woodyard's evidence and to enter judgment for Ravenwood. The trial court denied the motion and entered judgment on the verdict. Ravenwood appeals.

## II

At the time Woodyard fell, she was a tenant in Ravenwood Towers, residing in a second-floor apartment. She had lived there since 1976. She was 88 years old, and her eyesight was impaired. She often used a cane when she walked.

On July 31, 1988, about 10:30 a.m., Woodyard left her apartment and walked toward the building's elevators. She was accompanied by her son, with whom she lived.

The area of the hall in front of the elevators was dimly lighted. A dark floor covering was on both the hall and the elevators. The walls in the elevators were dark brown.

Woodyard's son reached the elevators first and pressed the call button. Woodyard approached the elevators from the side. As she approached them, she observed a "bright light." She testified that "[t]he bright light meant that the elevator was there, and open, and ready for [her] to get in." Upon seeing the light from one of the elevators, Woodyard stated that she "hurried to get it before it left, because the door only stayed open a few seconds." Woodyard also testified that, as she was entering the elevator, she "was going to reach with [one of her hands] and hold the button on open . . . to hold the elevator." However, she was unable to reach the button because, when she "put [her] right foot out, to step on the floor, . . . there wasn't any floor there." Consequently, she fell.

Unbeknownst to Woodyard, the elevator floor was aligned approximately one foot below the hall floor. Woodyard was not aware

of this condition "until [she] put [her] foot in and fell." She explained that "[w]hen [her] foot slipped and [she] looked down, there wasn't anyplace for [her] to put [her] foot."

Woodyard called three witnesses to establish that Ravenwood had constructive knowledge of the defective condition of the elevator. Each witness was a tenant in the building, and each had observed that the elevator was misaligned on the morning of July 31, prior to Woodyard's fall. One of the witnesses testified that she "was literally getting ready to walk [into the elevator]" when she realized that it was misaligned. Another witness stated that it was "[n]ot until [she] got on top of [the elevator]" that she realized it was not level. None of these witnesses entered the elevator.

## III

Over Ravenwood's objection, the trial court allowed the testimony of Dr. John Hannon, Woodyard's ophthalmologist. Woodyard had been a patient of Dr. Hannon for a number of years. His last examination of Woodyard, prior to her accident, was on May 17, 1988. From that examination, Dr. Hannon determined that Woodyard's "best corrected visual acuity in her right [eye] was 20 over 50" and "[h]er vision in her left eye was limited to counting fingers at two feet." The doctor concluded that Woodyard was "legally blind in her left eye." Dr. Hannon also testified that Woodyard "did not have a depth perception, as we commonly determine it, because of the extremely poor vision in her left eye."

Woodyard's next visit to Dr. Hannon was in March 1989, approximately eight months after her accident and approximately two years before her case was tried. At that time, an examination revealed that Woodyard also was legally blind in her right eye. Dr. Hannon opined that it was "most probable that there had been some deterioration of [Woodyard's] vision" between May 17, 1988, and July 31, 1988.

On cross-examination, Dr. Hannon was asked if Woodyard had "the ability to see the difference in depth between objects" on July 31, 1988. The doctor responded that he could not "honestly answer that question" and that Woodyard would be the best person to answer it.

Woodyard testified that on July 31 her eyesight "wasn't perfect, but [she] could see where [she] wanted to go, and [she] could see people." Woodyard also opined that, had she been looking down as

she entered the elevator, she could have seen that it was misaligned.

Ravenwood contends that, because Woodyard testified to facts within her own knowledge, the *Massie* v. *Firmstone* doctrine does not permit her to rely upon Dr. Hannon's conflicting testimony. In *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S.E. 652, 656 (1922), we stated the following:

> As a general rule when two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favorable to him. . . . This is not true, however, as to the testimony which he gives himself. No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified.

We also have held, however, that the *Massie* v. *Firmstone* doctrine does not apply to a litigant's statements of opinion. *Ford Motor Co.* v. *Bartholomew*, 224 Va. 421, 431, 297 S.E.2d 675, 680 (1982).

In *Ford Motor Co.*, a plaintiff testified on direct examination that she had " 'put the car in Park' " (referring to the gear shift of her car). 224 Va. at 427, 297 S.E.2d at 677. On cross-examination, clarifying her earlier statement, she testified that " '[a]s far as I am concerned it was in park.' " *Id.* at 431, 297 S.E.2d at 680. We concluded that the plaintiff *"thought"* the car was in park, but that this was simply her "impression." *Id.* We also stated that the plaintiff's "impression proved to be a misimpression, caused by a lack of knowledge." *Id.* She "did not know what the experts knew." *Id.* We held that her testimony "was not a statement of fact within her knowledge but an expression of opinion," and, therefore, the *Massie* v. *Firmstone* doctrine did not apply. *Id.*

A similar situation exists in the present case. Dr. Hannon, an expert, clearly established that Woodyard's eyesight was seriously impaired at the time she fell. He did not feel, however, that he could express an opinion about Woodyard's ability to discern the difference in depth between objects. Woodyard, on the other hand, was simply stating what she *thought* she could have seen at the time. It

was no more than an impression — an expression of opinion. Moreover, we do not think that Dr. Hannon's testimony tended to vary the testimony given by Woodyard.

Ravenwood also contends that Dr. Hannon's testimony should have been excluded because it "was not relevant and would not be probative of any issues before the Court." We disagree.

■ "Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted." *Harrell* v. *Woodson*, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987); *accord Spencer* v. *Commonwealth*, 240 Va. 78, 90, 393 S.E.2d 609, 616, *cert. denied*, 498 U.S. 908, 111 S.Ct. 281 (1990); *Cheng* v. *Commonwealth*, 240 Va. 26, 39, 393 S.E.2d 599, 606 (1990); *Va. Real Estate Comm.* v. *Bias*, 226 Va. 264, 270, 308 S.E.2d 123, 126 (1983). The weight to be given such circumstantial evidence is, of course, an issue for the jury. *Cheng*, 240 Va. at 39, 393 S.E.2d at 606.

■ In the present case, the jury had to consider, in the circumstances, what Woodyard saw, could have seen, and should have seen. One of the circumstances in making these findings was the condition of her eyesight. Dr. Hannon was the only witness qualified to render an expert opinion about Woodyard's ability to see, and we conclude that his testimony was both relevant and probative.

Accordingly, we conclude that the trial court did not err in admitting Dr. Hannon's testimony.

## IV

Next, Ravenwood contends that the trial court erred in denying its motion to strike Woodyard's evidence. Ravenwood asserts that the misaligned elevator "was open and obvious," and, therefore, Woodyard was contributorily negligent as a matter of law.*

---

* In asserting that Woodyard was contributorily negligent as a matter of law, Ravenwood argues that, under the *Massie* v. *Firmstone* doctrine, Woodyard is bound by her statement that, had she been looking down as she entered the elevator, she could have seen that it was misaligned. As we demonstrated earlier, however, *Massie* v. *Firmstone* is inapposite because Woodyard was merely expressing an opinion. Furthermore, Ravenwood attempts to take Woodyard's statement out of context, and we have said that *Massie* v. *Firmstone* does not apply to "an adverse statement standing in isolation from the litigant's testimony as a whole." *Baines* v. *Parker and Gladding*, 217 Va. 100, 105, 225 S.E.2d 403, 407 (1976).

■ Our standard of appellate review is firmly established. A trial court's judgment is presumed to be correct, *Wright and Hunt, Inc.* v. *Wright*, 205 Va. 454, 460, 137 S.E.2d 902, 907 (1964), and it will not be set aside unless it appears from the evidence that the judgment is plainly wrong or unsupported by the evidence, Code § 8.01-680; *Gray* v. *Commonwealth*, 233 Va. 313, 344, 356 S.E.2d 157, 174, *cert. denied*, 484 U.S. 873 (1987). Indeed, we have said that a party who comes before us with a jury verdict approved by the trial court "occupies the most favored position known to the law." *Pugsley* v. *Privette*, 220 Va. 892, 901, 263 S.E.2d 69, 76 (1980). On appeal, therefore, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the prevailing party at trial. *Marshall* v. *Goughnour*, 221 Va. 265, 266, 269 S.E.2d 801, 802 (1980).

■ Generally, contributory negligence is a factual issue for resolution by a jury. The issue becomes one of law for decision by a court only when reasonable minds could not differ about the conclusion to be reached. *Litchford* v. *Hancock*, 232 Va. 496, 499, 352 S.E.2d 335, 337 (1987). It also is the function of a jury to determine the credibility of witnesses and the weight of the evidence and to resolve all conflicts in the evidence. *Id.*

In support of its contention, Ravenwood relies upon a number of cases where we held that a plaintiff was guilty of contributory negligence as a matter of law because the dangerous condition was open and obvious, *viz*, *Scott* v. *City of Lynchburg*, 241 Va. 64, 399 S.E.2d 809 (1991); *Rocky Mount Shopping Ctr. Assoc.* v. *Steagall*, 235 Va. 636, 369 S.E.2d 193 (1988); *Tate* v. *Rice*, 227 Va. 341, 315 S.E.2d 385 (1984); *West* v. *City of Portsmouth*, 217 Va. 734, 232 S.E.2d 763 (1977); *Hillsville* v. *Nester*, 215 Va. 4, 205 S.E.2d 398 (1974). None of these cases is apposite to the present case.

In *Nester*, the plaintiff fell on a sidewalk where "one slab of the sidewalk had settled about two and one half inches below the connecting slab." 215 Va. at 5, 205 S.E.2d at 399. The depression had existed "for several years," and the plaintiff "had walked over it . . . that morning and numerous times previously." *Id.* In holding that the plaintiff was guilty of contributory negligence as a matter of law, we stated the following:

> We believe that the evidence, which leaves no material fact in dispute, compels the single conclusion that, for the same reason plaintiff failed to notice the defect during the eight months

she had used the sidewalk, she failed to see the defect on the day of the accident; she was simply unobservant and neglected to see what was open and obvious and what, by maintaining a lookout commensurate with the circumstances obtaining, she should have seen.

*Id.* at 6, 205 S.E.2d at 399-400.

Similarly, in *West*, the plaintiff was walking on a sidewalk that was in bad condition, ''but with which he was thoroughly familiar.'' 217 Va. at 738, 232 S.E.2d at 766. The water meter and its cover, which were installed in the sidewalk, were ''in clear view'' and their ''irregularity, unevenness or depression were open and obvious and could have been detected by anyone who was observant.'' *Id.* at 738-39, 232 S.E.2d at 766. Indeed, we said that such conditions in sidewalks are ''so common and usual that it is the duty of a pedestrian to be observant of such facts and not to walk blindly.'' *Id.* at 739, 232 S.E.2d at 766.

In *Scott*, the plaintiff knew of the existence of the condition that caused her to fall. 241 Va. at 65, 399 S.E.2d at 810. We adhered to the rule stated in *Hill* v. *City of Richmond*, 189 Va. 576, 584, 53 S.E.2d 810, 813 (1949), *i.e.*, ''when a plaintiff knows of the existence of a condition but, without any reasonable excuse, forgets about the condition and falls in, off, or over it, he is guilty of contributory negligence as a matter of law.'' *Scott*, 241 Va. at 67, 399 S.E.2d at 811.

In the present case, unlike the plaintiffs in *Nester*, *West*, and *Scott*, Woodyard neither knew of, nor should have been aware of, the dangerous condition. Apparently, the condition was of recent origin. Woodyard testified that, in all the years she had been living in the building, she had not known of a similar condition. Thus, Woodyard had no reason to expect the misalignment of the elevator.

In *Steagall*, the plaintiff was injured when, ''[o]n a clear morning,'' she stepped off a shopping center owner's sidewalk into a depression formed by a recessed water meter cover on the owner's parking lot. 235 Va. at 637, 369 S.E.2d at 194. The depression was eight to twelve inches across and two to three inches deep, and there was nothing to prevent the plaintiff from seeing the open and obvious condition. We held that, under those circumstances, she was guilty of contributory negligence as a matter of law. *Id.*

The facts in the present case are substantially different from those in *Steagall*. Woodyard is an elderly person with seriously diminished eyesight. Also, the floor coverings on the hall and elevator were dark, the walls of the elevator were brown, and the area where the elevators were located was dimly lighted. Further, Woodyard, in a hurry to press the button to keep the elevator door open and the elevator stationary as she entered, was acting as an ordinarily prudent person.

*Tate*, also, does not support Ravenwood's contention. In *Tate*, the plaintiff was injured when he slipped and fell on the defendant's driveway that was covered with snow. 227 Va. at 343, 315 S.E.2d at 387. The dispositive issue in that case was whether the defendant was guilty of primary negligence. *Id.* at 344, 315 S.E.2d at 387-88. We did say, however, that the defense of contributory negligence "depended upon factual issues which properly were submitted to the jury and resolved in [the plaintiff's] favor." *Id.* at 344, 315 S.E.2d at 387.

■ "Whether a condition or defect is open and obvious may be, under certain circumstances, a jury issue." *Scott*, 241 Va. at 66, 399 S.E.2d at 810; *see Crocker* v. *WTAR Radio Corp.*, 194 Va. 572, 575, 74 S.E.2d 51, 53 (1953); *Knight* v. *Moore*, 179 Va. 139, 147, 18 S.E.2d 266, 269 (1942). Considering all the facts and circumstances in the present case, we cannot say as a matter of law that Woodyard was guilty of contributory negligence. We think reasonable minds could differ on the issue. Consequently, the trial court did not err in submitting the issue to the jury.

## V

In sum, we hold that the trial court did not err in admitting Dr. Hannon's testimony and in refusing to rule that Woodyard was guilty of contributory negligence as a matter of law. Accordingly, the trial court's judgment will be affirmed.

*Affirmed.*